John J. CRANLEY III and Julius Grad, on behalf of themselves and all other similarly situated policyholders of National Life of Vermont, Plaintiffs,

v.

NATIONAL LIFE INSURANCE COMPANY OF VERMONT, National Life Holding Company, NLV Financial Corporation, Patrick E. Welch, Thomas H. MacLeay, James A. Mallon, William A. Smith, Rodney A. Buck, Gregory H. Doremus, Charles C. Kittredge, Robert E. Boardman, David R. Coates, Benjamin F. Edwards III, Earle H. Harbison, Jr., Roger B. Porter, E. Miles Prentice III, Thomas P. Salmon, A. Gary Shilling, Thomas R. Williams, Patricia K. Woolf, and Elizabeth Costle, Defendants.

Walter J. and Betty Birdsall, on behalf of themselves and all other similarly situated policyholders of National Life of Vermont, Plaintiffs,

v.

National Life Insurance Company of Vermont, National Life Holding Company, NLV Financial Corporation, Patrick E. Welch, Thomas H. MacLeay, James A. Mallon, William A. Smith, Rodney A. Buck, Gregory H. Doremus, Charles C. Kittredge, Robert E. Boardman, David R. Coates, Benjamin F. Edwards III, Earle H. Harbison, Jr., Roger B. Porter, E. Miles Prentice III, Thomas P. Salmon, A. Gary Shilling, Thomas R. Williams, Patricia K. Woolf, and Elizabeth Costle, Defendants.

Nos. 2:99–CV–323, 2:99–CV–348.

United States District Court,
D. Vermont.

May 15, 2001.

Geoffrey W. Crawford, O'Neill, Crawford & Green, Burlington, VT, Stanley M. Chesley, Robert A. Steinberg, Terrence L. Goodman, Waite, Schneider, Bayless & Chesley Co., L.P.A., Cincinnati, OH, Richard S. Wayne, William K. Flynn, Steven F. Stuhlbarg, Strauss & Troy, Cincinnati, OH, Howard Specter, David Manogue, Joseph N. Kravec, Jr., Specter, Specter, Evans & Manogue, P.C., Pittsburgh, PA, Michael G. Lange, John P. Zavez, Patrick T. Egan, Berman, DeValerio & Pease, Boston, MA, Jody Edward Anderman, LeBlanc, Maples & Waddell, Baton Rouge, LA, for Plaintiffs.

Robert Stephen Burke, Montpelier, VT, Jeffrey B. Rudman, John G. Fabiano, Andrea J. Robinson, Peter A. Spaeth, Sharon C. Simpson, Anita K. Krug, Hale and Dorr, LLP, Boston, MA, for Defendants.

*OPINION AND ORDER*

SESSIONS, District Judge.

This class action lawsuit challenges the reorganization of National Life Insurance

Company ("National Life") from a mutual insurance company to a mutual insurance holding company, pursuant to Section 3441 of Title 8 of Vermont Statutes Annotated. Vt.Stat.Ann. tit. 8, § 3441 (Supp.2000). The Plaintiffs, National Life policyholders, allege that the reorganization is designed to divest policyholders of their ownership interests in the company without providing compensation, and will confer stock ownership and other benefits upon the officers and directors of National Life to which they are not entitled. In particular, the Plaintiffs claim that the statute, both facially and as applied, violates the Contract Clause of the United States Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and constitutes an unlawful taking in violation of the Fourteenth Amendment to the United States Constitution. They also assert direct or derivative state law claims against the individual Defendants for breach of fiduciary duty, self-dealing, waste of corporate assets, dilution of voting rights of shareholders, fraudulent concealment or negligent omission, and conversion.

The Defendants have moved to dismiss the complaint in its entirety, arguing that this Court should abstain under the *Burford* and *Pullman* doctrines, that the Plaintiffs fail to state any claim upon which relief can be granted, and that the state law claims suffer from a variety of fatal defects, including failure to exhaust administrative remedies and failure to allege fraud or negligent omission with the requisite particularity. For the reasons stated below, the motions to dismiss (Docs. 27 and 28) are **granted in part and denied in part as moot.**

## BACKGROUND

The following facts are matters of public record, or are taken as true for purposes of this motion to dismiss.

## I. *The Mutual Insurance Company*

Mutual insurance companies are organized in a cooperative form, largely for the benefit of their policyholders. In exchange for paying premiums, the policyholders receive life insurance policies at cost and an ownership interest in the firm. By providing the funds for reserves to cover expected liabilities, policyholders provide the mutual company with "surplus," funds designed to cover unanticipated liabilities. The policyholders' ownership interest gives them, among other things, the right to elect a board of directors to manage the company, receive any dividends or reductions in premiums declared by the board, and receive any surplus if the company is dissolved.

Traditionally, a mutual insurance company that wished to change its structure to become a stock insurance company went through a "demutualization," in which each policyholder's equity in the company was calculated, and the policyholder permitted to acquire the equivalent in cash or stock in the new company. Several states, including Vermont, have recently enacted laws allowing a mutual company to convert to a stock insurance company without compensating policyholders for their equity by forming a mutual insurance holding company with a stock insurance company subsidiary. The policyholders' ownership interests in the mutual company are transformed into ownership interests in the holding company. The holding company retains a majority of the voting shares of the capital stock of the subsidiary stock insurance company. The stock company can then raise capital by selling its stock.

Following reorganization, the policyholders' interests are essentially split: their ownership rights are transferred to the

mutual holding company and their contractual rights to benefits and dividends remain with the insurance company, which is now a stock company. The policyholders are thus no longer the sole recipients of future profits, which therefore may not be available to them in the form of dividends or reduced premiums.

## II. *The Statute and Regulations*

Vermont law permits a domestic mutual insurance company, upon approval of the Commissioner of Banking, Insurance, Securities, and Health Care Administration ("the Commissioner" or "BISHCA"), to reorganize by forming a mutual insurance holding company, which will control a subsidiary stock insurance company. Vt.Stat. Ann. tit. 8, § 3441(a) (Supp.2000). In order to reorganize, the company must file an application with the Commissioner, which must include the plan of reorganization, the proposed charters, articles of association and bylaws for the mutual insurance holding company and any insurance company subsidiary, "and such other relevant information as the commissioner shall require." *Id.* That relevant information must include, among other things, the company's plan to obtain the approval of policyholders; information sufficient to demonstrate that the formation of a mutual insurance holding company will not cause financial impairment to the reorganizing insurer; that the resources of the mutual insurance company are sufficient to accomplish the plan or reorganization successfully; and that the reorganization is not contrary to the financial interests of or unfair to the policyholders. Regulation 97–5 § 5(A)(4–8).

The company's plan of reorganization must include, among other things, a plan to establish a "closed block," consisting of all participating policies in force on the adoption date, for purposes of paying policyholder dividends. Reg. 97–5 § 5(B)(5). The reorganizing insurer must allocate cash flow-producing assets to this closed block, in an amount sufficient to pay claims, expenses and taxes, "and the continuation of dividend scales in effect on the adoption date if the experience underlying such scales continues." *Id.*

In considering an application, the Commissioner may, in her discretion, hold a public hearing, for which the applicant must provide commissioner-approved notice to its policyholders. Tit. 8, § 3441(a); Reg. 97–5 § 6(B). The Commissioner will not approve a completed application for reorganization unless the reorganizing insurer's board of directors approves the plan by not less than a two-thirds majority. Reg. 97–5 § 6(C). Before approval the Commissioner must consider, among other factors, whether the proposed reorganization would be unfair to or contrary to the financial interests of policyholders, and whether the proposed reorganization promotes the general good of the state. Tit. 8, § 3441(a); Reg. 97–5 § 6(C)(5–7).

The reorganization of a domestic mutual insurance company must also be approved by its members or policyholders, at a meeting in which policyholders vote, in person or by proxy, upon the proposed plan of reorganization. Tit. 8, § 3441(c); Reg. 97–5 § 6(E). The reorganizing insurer must be able to certify to the Commissioner that the plan of reorganization was approved by no fewer than two-thirds of the policyholders voting. Reg. 97–5 § 6(E)(5). If five percent of the policyholders who voted against the reorganization petition the Commissioner, she will order a hearing, at which any policyholder may appear and be heard concerning the reorganization. Tit. 8, § 3441(c), Vt.Stat. Ann. tit. 8, § 3429 (1984). If the Commissioner is not satisfied that the interests of the policyholders are properly protected,

or if reasonable objection exists to the reorganization, she will revoke her approval of the plan. *Id.*, § 3429.

The Commissioner retains continuing jurisdiction over a mutual insurance holding company and its subsidiaries after a reorganization has occurred "for the protection of policyholders as policyholders and the interests of policyholders as members of the mutual insurance holding company." Reg. 97–5 § 8(A). Thus, a stock offering by an entity created by a plan of reorganization may not occur without prior approval of the Commissioner. *Id.* § 7(A).

Any person aggrieved by an order of the Commissioner may appeal to the state supreme court, which "may reverse or modify the order if it (1)[w]as issued pursuant to unconstitutional statutory provisions; or (2)[w]as in excess of statutory authority; or (3)[w]as issued on unlawful procedure; or (4)[i]s not supported by substantial evidence in the record." Vt.Stat.Ann. tit. 8, § 77 (Supp.2000).

### III. *Procedural History*

National Life submitted an initial application to reorganize on May 12, 1998. *In re National Life Ins. Co.*, BISHCA Order dated Oct. 2, 1998 ¶ 15 (Doc. 27, Ex. 2).[1] The application's plan of reorganization had been unanimously approved by National Life's Board of Directors on May 8, 1998. *Id.* A public hearing was held on September 16, 1998, with the record held open until September 22, 1998 for written testimony or comments on the proposed reorganization. *Id.* ¶¶ 26–27.

On October 2, 1998, the Commissioner approved the proposed reorganization. In her order, the Commissioner concluded

that National Life had met the legal standard that required her to approve the reorganization unless she found that the proposed reorganization would be unfair to policyholders. *Id.* ¶¶ 99–104. She found specifically that "[u]nder the plan, the membership interests of National Life policyholders will be substantially the same after transfer to [the mutual insurance holding company;] .... the Plan does not substantively alter the membership or contractual rights of National Life's policyholders." *Id.* ¶¶ 101, 104.

The Commissioner also concluded that National Life had met the legal standard that required her to approve the reorganization unless she found that the proposed reorganization would be contrary to the financial interests of the policyholders. *Id.* ¶¶ 105–112. She found specifically that the closed block would "preserve and protect the reasonable dividend expectations of policyholders," based on expert opinions that the actuarial assumptions underlying the funding of the closed block and the methods of operation of the closed block were reasonable. *Id.* ¶ 106.

The Commissioner ordered National Life to provide its policyholders with a policyholder information statement, a summary of the statement written in plain English, a copy of the plan of reorganization, and a summary of the plan of reorganization written in plain English. *Id.*, Order ¶ 12. The These materials were sent to policyholders on October 12, 1998. The Policyholder Information Statement stated: **"The Commissioner's approval is not an endorsement of the Plan, nor a recommendation to vote in favor of the Plan."** PIS at 2 (emphasis in original)

---

1. On a motion to dismiss, a court may consider matters of public record, of which the parties had notice, integral to the plaintiffs' claims, without converting the motion to one for summary judgment. *See Schnall v. Ma-*

*rine Midland Bank*, 225 F.3d 263, 266 (2d Cir.2000); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991). The BISHCA Order is such a document.

(Doc. 27, Ex. 3). The reorganization was approved by policyholders at a special meeting held November 30, 1998.

No dissenting policyholders petitioned the Commissioner for a hearing pursuant to § 3429. Neither did any policyholders appeal the Commissioner's decision to the Vermont Supreme Court.

The Plaintiffs filed their Amended and Consolidated Class Action and Derivative Complaint (Doc. 10) on December 8, 1999. As Defendants, they name National Life, the mutual insurance holding company, the stock holding company, the officers and directors of National Life, and the Commissioner of BISHCA in her official capacity. Three counts of the nine count complaint allege that § 3441 is unconstitutional, both on its face and as applied by the Commissioner. Count I alleges that § 3441 deprives policyholders of their contractual ownership rights in the mutual insurance company, and fails to provide them with any compensation for that deprivation, in violation of the prohibition against impairment of contractual obligations contained in Article I, § 10 of the United States Constitution. Count II alleges that § 3441 is arbitrary and capricious, in violation of substantive due process rights guaranteed by the Fourteenth Amendment to the United States Constitution. Count III alleges an unconstitutional taking of Plaintiffs' property, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

Counts IV through VI are brought against the individual Defendants. Count IV alleges that these Defendants have violated their fiduciary duties not to engage in acts of self-dealing, not to waste corporate assets, and not to dilute or diminish shareholder voting rights. Count V alleges that the individual Defendants fraudulently concealed or negligently omitted material information concerning negative aspects of the plan of reorganization that misled policyholders into either not voting or voting in favor of the reorganization. Count VI alleges that the individual Defendants effected a tortious conversion of the policyholders' property interest in National Life's surplus. In the alternative, Counts VII through IX assert derivative claims against the individual Defendants for breach of fiduciary duty, self-dealing and waste of corporate assets (Count VII); fraudulent concealment or negligent omission (Count VIII); and conversion (Count IX).

## DISCUSSION

### I. *Legal Standard*

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The factual allegations contained in the complaint are accepted as true and all reasonable inferences are drawn in the plaintiffs' favor. *See Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000). The Court has also considered the procedural facts, findings and conclusions contained in the BISHCA Order approving the plan of reorganization. *See id.* (appropriate on motion to dismiss to consider information integral to claims of which plaintiff had notice).

### II. *Abstention*

#### A. *The Burford Doctrine*

Under the abstention doctrine announced in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), a federal court sitting in equity should dismiss an action "(1) when there

are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) ("*NOPSI*") (quoting *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). *See also Hachamovitch v. DeBuono,* 159 F.3d 687, 697 (2d Cir.1998).

The United States Supreme Court cases expounding the *Burford* doctrine have "illustrated the narrow range of circumstances in which *Burford* can justify the dismissal of a federal action." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 726, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). In determining whether dismissal under *Burford* is appropriate, a federal court must make an "equitable decision balanc[ing] the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court, against the State's interests in maintaining uniformity in the treatment of an essentially local problem, and retaining local control over difficult questions of state law bearing on policy problems of substantial public import." *Id.* at 728, 116 S.Ct. 1712 (citations and internal quotation marks omitted). As the Court in *Quackenbush* noted, "[t]his balance only rarely favors abstention, and the power to dismiss recognized in *Burford* represents an 'extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it.'" *Id.* (quoting *Colo. River,* 424 U.S. at 813, 96 S.Ct. 1236). *See also Hachamovitch,* 159 F.3d at 697.

In the Second Circuit, three factors are examined to determine whether *Burford* abstention is appropriate: "(1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern." *Id.* (citing *Bethphage Lutheran Serv. Inc. v. Weicker,* 965 F.2d 1239, 1243 (2d Cir.1992)). The first *Bethphage* factor, degree of specificity, "focuses more on the extent to which the federal claim requires the federal court to *meddle* in a complex state scheme." *Id.* (emphasis in original). The Plaintiffs' federal claims will not involve federal court meddling in a complex statutory scheme: they seek determinations that the statutory scheme and the Commissioner's actions violate the Constitution. *Burford* "does not require abstention whenever there exists ... a [complex state administrative process] or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." *NOPSI,* 491 U.S. at 362, 109 S.Ct. 2506. Abstention is intended to prevent undue interference with the processes of state government, but " 'there is ... no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy.'" *Id.,* 491 U.S. at 363, 109 S.Ct. 2506 (quoting *Zablocki v. Redhail,* 434 U.S. 374, 380 n. 5, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978)).

The second factor, the debatable interpretation of a state statute, also does not favor abstention. In their federal claims, the Plaintiffs seek a determination that the Commissioner applied the statute and the regulations unconstitutionally. This determination does "not put the federal court into the business of interpreting the state regulatory regime." *Hachamovitch,* 159 F.3d at 698. Although the approval of a proposed mutual insurance holding compa-

ny formation may require the Commissioner to resolve complex issues concerning, for example, the financial or management resources of the company, the establishment of a closed block, or the general good of the state, this lawsuit does not involve the federal court in second-guessing the agency's interpretation of state law. *See Burford,* 319 U.S. at 334, 63 S.Ct. 1098 (conflicts in the interpretation of state law, dangerous to success of state policies will justify abstention).

■ As to the third factor, whether the subject matter of the litigation is traditionally one of state concern, it is undeniable that the reorganization of a mutual insurance company is a matter of extreme importance to the State. This factor alone will not justify abstention, however. *See Planned Parenthood of Dutchess–Ulster, Inc. v. Steinhaus,* 60 F.3d 122, 127 (2d Cir.1995). *Burford* abstention is not required "even in cases where the state has a substantial interest if the state's regulations violate the federal constitution." *Hachamovitch,* 159 F.3d at 698.

Weighing the federal interest in retaining jurisdiction over a controversy properly brought in federal court against "the competing concern for the 'independence of state action,'" *Quackenbush,* 517 U.S. at 728, 116 S.Ct. 1712 (quoting *Burford,* 319 U.S. at 334, 63 S.Ct. 1098), and employing the *Bethphage* factors, this Court concludes that *Burford* abstention is not warranted.

## B. *The Pullman Doctrine*[2]

■ Under the *Pullman* abstention doctrine, "when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question." *Harris County Comm'rs Ct. v. Moore,* 420 U.S. 77, 83, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975). However, "federal courts need not abstain on *Pullman* grounds when a state statute is not 'fairly subject to an interpretation which will render unnecessary' adjudication of the federal constitutional question." *Haw. Hous. Auth. v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984) (quoting *Harman v. Forssenius,* 380 U.S. 528, 535, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965)).

■ Three conditions must be present for *Pullman* abstention to be appropriate: "(1) an unclear state statute is at issue; (2) resolution of the federal constitutional issue depends on the interpretation of the state law; and (3) the law is susceptible 'to an interpretation by a state court that would avoid or modify the federal constitutional issue.'" *Vt. Right to Life Comm., Inc. v. Sorrell,* 221 F.3d 376, 385 (2d Cir. 2000) (quoting *Greater N.Y. Metro. Food Council v. McGuire,* 6 F.3d 75, 77 (2d

---

**2.** Plaintiffs contend that it is procedurally inappropriate to seek *Pullman* abstention via a motion to dismiss, because a decision to abstain under *Pullman* would result in a stay, not a dismissal of proceedings. Although application of the *Pullman* abstention doctrine usually results in a stay, federal courts are not barred from issuing a stay on a motion to dismiss. *See, e.g., Bellotti v. Baird,* 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976) (appellants had moved to dismiss, seeking *Pullman* abstention; held appropriate for dis-

trict court to stay case, retain jurisdiction and certify to state supreme court). *See also* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1360 (2d ed.1990) (motion to stay or dismiss on abstention grounds not one of the defenses enumerated in Rule 12(b), but relying on their inherent power federal courts consider such motion to make most effective use of judicial resources and avoid deciding matters peculiarly suited to determination by state's tribunals.)

Cir.1993) (per curiam)). Satisfaction of these three conditions does not automatically result in abstention, however. *See id.* "The abstention doctrine is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers." *Baggett v. Bullitt,* 377 U.S. 360, 375, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).

■■■ At the outset, Defendants have not identified any unclear provisions of state law whose interpretation would avoid or modify the constitutional issues presented. Defendants' argument—Plaintiffs must prove that the reorganization deprived them of property rights; whether the Plaintiffs' interests are property rights is an issue of state law; no Vermont court has ruled whether mutual insurance company policyholders have property rights—does not demonstrate that the statute and regulations at issue, or even the state common law, are ambiguous or unintelligible. An issue of state law is not "unclear" merely because no state court has yet addressed it. *See Planned Parenthood of Dutchess–Ulster, Inc. v. Steinhaus,* 60 F.3d 122, 126 (2d Cir.1995) (citing *Wisconsin v. Constantineau,* 400 U.S. 433, 438–39, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971)). *See also Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716–17, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (*Pullman* abstention in order when federal constitutional question might be obviated were state courts given

opportunity to interpret ambiguous state law). The Defendants do not contend that the state statute, or the regulations implementing it, is ambiguous. " '[W]here a state statute is unambiguous the court must perform its adjudicative duty and has no right to abstain merely because a state court decision might render a federal adjudication unnecessary.' " *Alliance of Am. Insurers v. Cuomo,* 854 F.2d 591, 602 (2d Cir.1988) (quoting *McRedmond v. Wilson,* 533 F.2d 757, 761–62 (2d Cir.1976)). Because Defendants have failed to establish the first prerequisite for *Pullman* abstention, *Pullman* abstention is not warranted.[3]

### III. *Facial Constitutional Challenges*

In Counts I through III, Plaintiffs have mounted facial constitutional challenges to § 3441, asserting that the Act effects an impairment of contract, violates substantive due process, and constitutes an unlawful taking. To prevail on a facial attack, a plaintiff "must demonstrate that the challenged law either 'could never be applied in a valid matter' or that even though it may be validly applied to the plaintiff and others, it nevertheless is so broad that it 'may inhibit the constitutionally protected speech of third parties.' " *N.Y. State Club Ass'n, Inc. v. City of New York,* 487 U.S. 1, 11, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988) (quoting *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 798,

---

**3.** The Court notes that a different result was reached in a similar case from the Eastern District of Pennsylvania challenging a proposed plan of conversion from a mutual insurance company to a stock insurance company. *See In re Provident Mut. Life Ins. Co. Mut. Holding Co. Litig.,* 41 F.Supp.2d 562 (E.D.Pa. 1999). The district court in that case concluded that abstention was appropriate under the *Pullman* doctrine, as well as the *Colorado River* doctrine. *See Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 96

S.Ct. 1236, 47 L.Ed.2d 483 (1976). In its decision, the district court stressed the pendency of "nearly identical" state court proceedings, and the existence of "a number of uncertain issues of state law." *In re Provident,* 41 F.Supp.2d at 566. Without knowing what the "uncertain issues of state law" were, and absent the potential for disruption of an ongoing state court proceeding in the case at bar, this Court respectfully declines to keep company with the decision in *In re Provident.*

104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)). Protected speech is not at issue here.

### A. *Contract Clause claim*

■ Section 10 of Article I of the Constitution bars a state from passing any "Law impairing the Obligation of Contracts." U.S. Const. Art. I, § 10. This provision does not impose an absolute prohibition, however. The Contract Clause accommodates "the inherent police power of the State 'to safeguard the vital interests of its people.'" *Energy Reserves Group, Inc. v. Kan. Power & Light Co.,* 459 U.S. 400, 410, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983) (quoting *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 434, 54 S.Ct. 231, 78 L.Ed. 413 (1934)).

■ A Contract Clause analysis begins with the question " 'whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.'" *Id.,* 459 U.S. at 411, 103 S.Ct. 697 (quoting *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 244, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978)). If the law works a substantial impairment, the State must be able to justify its enactment with "a significant and legitimate public purpose," ensuring that "the State is exercising its police power, rather than providing a benefit to special interests." *Id.,* 459 U.S. at 411–12, 103 S.Ct. 697. If a State shows a legitimate public purpose, the next question is whether the "means chosen to accomplish this purpose are reasonable and appropriate." *Sanitation & Recycling Indus., Inc. v. City of New York,* 107 F.3d 985, 993 (2d Cir.1997) (citing *Energy Reserves,* 459 U.S. at 412, 103 S.Ct. 697); *Allied Structural Steel,* 438 U.S. at 242–44, 98 S.Ct. 2716; *United States Trust Co. of N.Y. v. New Jersey,* 431 U.S. 1, 22–23, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977). Courts will " 'defer to legislative judgment as to the necessity and reasonableness of a particular mea-

sure.'" *Energy Reserves,* 459 U.S. at 413, 103 S.Ct. 697 (quoting *United States Trust Co.,* 431 U.S. at 23, 97 S.Ct. 1505).

■ Count I's facial challenge under the Contract Clause fails because the statute itself, which merely prescribes a procedure for undertaking reorganization if the company and its policyholders approve, has not diminished the contractual rights of the Plaintiffs, nor altered the terms of their contractual relationship with National Life. Section 3441 constitutes no impairment, substantial or otherwise, to contractual relationships between a mutual insurance company and its policyholders.

### B. *Takings claim*

■ Plaintiffs allege in Count III that because § 3441 authorizes National Life to reorganize into a mutual holding company without compensating them for the loss of their rights and interests, the statute is facially unconstitutional as an unlawful taking. Am.Compl. ¶¶ 74, 77 (Doc. 10). The issue on this facial attack is whether the "mere enactment" of § 3441 has deprived Plaintiffs of "economically viable use of their property." *Hodel v. Va. Surface Mining and Reclamation Ass'n, Inc.,* 452 U.S. 264, 297, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981). *See also Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 495, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987).

The statute does not deprive policyholders of ownership rights in the mutual insurance company, nor of rights in the surplus. The statute does not even purport to regulate the policyholders' alleged rights or interests in the company. It merely authorizes and prescribes a process by which a mutual insurance company, if it so chooses, may undertake a reorganization into a mutual insurance holding company. The enactment, in and of itself, of

§ 3441 cannot be interpreted to have denied Plaintiffs economically viable use of their property. Only if and when the statute is implemented could there arguably be any change in policyholder rights and interests. Plaintiffs' facial challenge to the statute as an unconstitutional taking must be dismissed for failure to state a claim.

### C. *Substantive Due Process claim*

Plaintiffs' facial challenge in Count II to the statute as a violation of substantive due process similarly fails to state a claim. Assuming that Plaintiffs have articulated a fundamental property interest not subsumed within the Takings Clause, *see Tenenbaum v. Williams,* 193 F.3d 581, 599 (2d Cir.1999), *cert. denied,* 529 U.S. 1098, 120 S.Ct. 1832, 146 L.Ed.2d 776 (2000); *Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir.1995), the mere existence of the statute does not deprive them of this interest.

Accordingly, Plaintiffs' facial constitutional challenges to § 3441 are dismissed for failure to state a claim.

### IV. *State Action*

█ In Counts I through III the Plaintiffs also allege that Title 8, § 3441 was unconstitutionally applied by the Commissioner of BISHCA to approve National Life's plan of reorganization. The Defendants argue that the claims fail for lack of state action, that the conduct at issue cannot be deemed to be that of the state.

In *Blum v. Yaretsky,* the Supreme Court reiterated that a Fourteenth Amendment claim must involve state action: the " 'Amendment erects no shield against merely private conduct, however discriminatory or wrongful.' " 457 U.S. 991, 1002, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (quoting *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948)). An impairment of contracts claim must likewise involve state action. U.S. Const. art. I, § 10 ("No State shall ... pass any ... Law impairing the Obligation of Contracts"). The state action requirement entails "*both* an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' *and* that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.' " *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)) (emphasis in original).

The fact that a business is subject to extensive state regulation does not " 'convert its action into that of the State for purposes of the Fourteenth Amendment.' " *Blum v. Yaretsky,* 457 U.S. at 1004, 102 S.Ct. 2777 (quoting *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 350, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)). A "close nexus" is required between the State and the challenged action in order "to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Id.* (emphasis in original). "Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives." *Id.,* 457 U.S. at 1004–05, 102 S.Ct. 2777.

There can be no dispute that the Commissioner is a state actor. There is likewise no dispute that the Amended Complaint challenges a state statute. But to satisfy the state action requirement, the alleged unconstitutional conduct must be "fairly attributable to the State." *Am. Mfrs.,* 526 U.S. at 50, 119 S.Ct. 977. To determine whether the conduct alleged is fairly attributable to the State necessitates

"identifying 'the specific conduct of which the plaintiff[s] complain[ ].'" *Id.*, 526 U.S. at 51, 119 S.Ct. 977 (quoting *Blum v. Yaretsky*, 457 U.S. at 1004, 102 S.Ct. 2777).

The Defendants contend that it is National Life and its policyholders, not the State, that engaged in the conduct of which Plaintiffs complain, and this Court must agree. Reorganization into a mutual insurance holding company was proposed by National Life, approved by its board of directors and approved by the voting policyholders, all private entities. Section 3441(c) provides that reorganization of a mutual insurance company may only take place upon the approval of its policyholders. Granting for the sake of argument that Plaintiffs have been deprived of property and/or that their contractual rights have been impaired, the Commissioner of BISHCA is not the culprit.

The Commissioner did not compel National Life to undertake reorganization. Her actions in applying § 3441 to National Life consist of the following: she approved National Life's proposed plan of reorganization subject to the approval of the policyholders, she authorized a vote on the plan by the policyholders, and she approved the notice to be sent to the policyholders informing them of the proposed plan. Am. Compl. ¶ 18. *See also* Pls.' Mem. in Opp'n at 35. "A regulator's failure to prohibit a privately initiated and implemented transaction does not violate the Constitution." *Ordower v. Office of Thrift Supervision*, 999 F.2d 1183, 1187 (7th Cir.1993). *See, e.g., DeShaney v. Winnebago County Dep't. of Soc. Servs.*, 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (purpose of due process clause was to protect people from the State, not to ensure that the State protected them from each other).

The decision to reorganize was based on business judgments made by private parties. Like the decisions to discharge or transfer nursing home patients in *Blum v. Yaretsky* and to withhold workers' compensation payments pending utilization review in *American Manufacturers*, the decision to reorganize into a mutual insurance holding company did not involve state action. *See Blum v. Yaretsky*, 457 U.S. at 1008, 102 S.Ct. 2777; *Am.Mfrs*, 526 U.S. at 52, 119 S.Ct. 977.

Accordingly, Plaintiffs' facial and as-applied challenges to § 3441 as working an unconstitutional taking, impairment of contract and violation of substantive due process in Counts I, II and III are dismissed for failure to state a claim.

## V. *Voluntary Dismissal*

The Plaintiffs have alleged that this Court has diversity as well as supplemental jurisdiction over their state law claims. However, at oral argument Plaintiffs' counsel requested that if the federal constitutional claims were to be dismissed, the state law claims be dismissed as well, to enable the state law claims to be refiled in state court. Tr. at 81, 97.

Rule 41(a)(1) permits a plaintiff to obtain a voluntary dismissal without order of court by filing a notice of dismissal at any time before an answer or motion for summary judgment is filed, subject to the provisions of Rule 23(e). Fed.R.Civ.P. 41(a)(1)(i). Rule 23(e) provides that a class action may not be dismissed without the approval of the court and notice to the class members. Rule 23(e) thus negates a class-action plaintiff's right to secure a voluntary dismissal "merely by filing with the court a notice of dismissal." *In re Phillips Petroleum Sec. Litig.*, 109 F.R.D. 602, 606–07 (D.Del.1986). A class-action plaintiff must obtain approval of the court for dismissal of the suit, even in the pre-certification stage. *See Goldstein v. Delgratia Min-*

*ing Corp.,* 176 F.R.D. 454, 457 (S.D.N.Y. 1997). *See also Janus Films, Inc. v. Miller,* 801 F.2d 578, 582 (2d Cir.1986) (dismissal under Fed.R.Civ.P. 41(a)(1)(ii) requires court approval); *Papilsky v. Berndt,* 466 F.2d 251, 257 (2d Cir.1972) (Rule 23.1 applies to voluntary dismissals under Rule 41(a)(1)). *But see Sosna v. Iowa,* 419 U.S. 393, 399 n. 8, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (after certification, class action suit may not be settled or dismissed without court approval); *Shelton v. Pargo, Inc.,* 582 F.2d 1298, 1303 (4th Cir.1978) (application of Rule 23(e) confined to certified class action). In determining whether to approve a dismissal, the Court must examine whether the plaintiff class would be prejudiced by the voluntary dismissal. *In re Phillips,* 109 F.R.D. at 607.

 Approval of Plaintiffs' request for voluntary dismissal is warranted. This is not a situation in which there is any hint of collusive settlement. There is no prospect of prejudice to class members. *See Larkin Gen. Hosp., Ltd. v. AT & T,* 93 F.R.D. 497, 501–02 (E.D.Pa.1982).

"If neither loss of benefit to the class nor evidence of collusive agreement is present, notice of dismissal is unnecessary." *Id.* at 503 (citing H. Newberg, Class Actions §§ 4950, 4960, at 405–06 (1977)). *See also Shelton,* 582 F.2d at 1315 (district court not required to order notice of dismissal precertification). The dismissal is without prejudice. There is apparently no danger that the statute of limitations is about to run on these claims. This Court is "satisfied that none of the reasons which underlie the notice requirements of Fed.R.Civ.P. 23 and 23.1 with respect to voluntary discontinuances are operative here; no one's rights are being cut off and no potential abuses are present." *Sheinberg v. Fluor Corp.,* 91 F.R.D. 74, 75 (S.D.N.Y.1981). *See also Larkin,* 93

F.R.D. at 502 (language of Rule 23(e) sufficiently flexible to permit court to approve dismissal, but determine notice not required, where dismissal will not result in prejudice to class).

## CONCLUSION

The Defendants' motions to dismiss are granted in part and denied in part as moot. Counts I, II and III are dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Counts IV through IX are dismissed without prejudice, at Plaintiffs' request.