318 F.3d 105
 John J. CRANLEY, III, Julius Grad and Walter J. Birdsall, on behalf of themselves and all other similarly situated policyholders of National Life of Vermont, Plaintiffs-Appellants,
Betty C. Birdsall, on behalf of herself and all other similarly situated policyholders of National Life of Vermont, Plaintiff,
v.
NATIONAL LIFE INSURANCE COMPANY OF VERMONT, National Life Holding Company, NLV Financial Corporation, Patrick E. Welch, Chairman of the Board of Directors and Chief Executive Officer of National Life Insurance Company of Vermont, Thomas MacLeay, President and Chief Operating Officer, and member of the Board of Directors of National Life Insurance Company of Vermont, James A. Mallon, Executive Vice President and Chief Marketing Officer of National Life Insurance Company of Vermont, William A. Smith, Executive Vice President and Chief Financial Officer of National Life Insurance Company of Vermont, Rodney A. Buck, Senior Vice President and Chief Investment Officer of National Life Insurance Company of Vermont, Gregory H. Doremus, Senior Vice President of National Life Insurance Company of Vermont, Charles C. Kittredge, Senior Vice President of National Life Insurance Company of Vermont, Robert E. Boardman, David R. Coates, Benjamin F. Edwards, III, Earle H. Harbison, Jr., Roger B. Porter, E. Miles Prentice, III, Thomas P. Salmon, A. Gary Shilling, Thomas R.
Williams, Patricia K. Woolf, Members of the Board of Directors of National Life Insurance Company of Vermont, Elizabeth R. Costle, Commissioner of the Department of Banking, Insurance, Securities, and Health Care Administration of the State of Vermont, in her Official capacity, Defendants-Appellees.
 Docket No. 01-7706.
 United States Court of Appeals, Second Circuit.
 Argued: June 4, 2002.
 Decided: January 21, 2003.
 
 Steven F. Stuhlbarg, Cincinnati, Ohio (Richard S. Wayne, William K. Flynn, Strauss & Troy, Cincinnati, Ohio, Geoffrey W. Crawford, O'Neill Crawford & Green, Burlington, Vermont, Stanley M. Chesley, Robert A. Steinberg, Waite, Schneider, Bayless & Chesley, Cincinnati, Ohio, Howard A. Specter, David J. Manogue, Joseph N. Kravec, Jr., Specter Specter Evans & Manogue, Pittsburgh, Pennsylvania, Glen DeValerio, Michael G. Lange, John P. Zavez, Berman DeValerio & Pease, Boston, Massachusetts, Jody Anderman, Leblanc, Maples & Waddell, Baton Rouge, Louisiana, on the brief), for Plaintiffs-Appellants.
 Jeffrey B. Rudman, Boston, Massachusetts (Andrea J. Robinson, Peter A. Spaeth, Jonathan A. Shapiro, Sharon Simpson Jones, Hale & Dorr, Boston, Massachusetts, Robert S. Burke, National Life Insurance Company, Montpelier, Vermont, on the brief), for Defendants-Appellees National Life Insurance Company of Vermont, National Life Holding Company, NLV Financial Corporation, Welch, MacLeay, Mallon, Smith, Buck, Doremus, Kittredge, Boardman, Coates, Edwards, Harbison, Porter, Prentice, Salmon, Shilling, Williams, and Woolf.
 Bridget C. Asay, Assistant Attorney General, Montpelier, Vermont (William H. Sorrell, Attorney General of the State of Vermont, and Cathy Nelligan Norman, Assistant Attorney General, Montpelier, Vermont, on the brief), for Defendant-Appellee Costle.
 Malakoff Doyle & Finberg, Pittsburgh, Pennsylvania (Michael P. Malakoff, Erin M. Brady, Pittsburgh, Pennsylvania, of counsel), filed a brief for Amicus Curiae National Consumer Law Center, in support of Plaintiffs-Appellants.
 Debevoise & Plimpton, New York, New York (Bruce E. Yannett, Carl Micarelli, New York, New York, Duncan J. Logan, Metropolitan Life Insurance Company, New York, New York, Colby A. Smith, Debevoise & Plimpton, Washington, D.C., of counsel), filed a brief for Amici Curiae Metlife, Inc., and Metropolitan Life Insurance Company, in support of Defendants-Appellees.
 Before: KEARSE and McLAUGHLIN, Circuit Judges, and Daniels, District Judge.*
 KEARSE, Circuit Judge.
 
 
 1
 Plaintiffs John J. Cranley, III, et al., appeal from a judgment of the United States District Court for the District of Vermont, William K. Sessions, III, Judge, dismissing their claims that the two-step conversion of defendant National Life Insurance Company of Vermont ("National Life") from a mutual to a stock life insurance company in accordance with Vermont Banking and Insurance Law, see Vt. Stat. Ann. tit. 8, § 3441 (Supp.2001), as approved by defendant Elizabeth R. Costle in her official capacity as Commissioner of the Department of Banking, Insurance, Securities and Health Care Administration of the State of Vermont (the "Commissioner"), violated their rights under the Contracts Clause and the Due Process Clause of the Constitution, constituted an unlawful taking in violation of the Fourteenth Amendment, and violated various rights under state law. The district court granted the motions of defendants National Life, its officers, directors, and corporate affiliates National Life Holding Company ("National Life Holding") and NLV Financial Corporation ("NLV Financial"), and the Commissioner to dismiss plaintiffs' federal constitutional claims for failure to plead facts sufficient to establish either a facial constitutional violation or state action; the court declined to exercise supplemental jurisdiction over plaintiffs' state-law claims and dismissed those claims without prejudice. On appeal, plaintiffs challenge the dismissal of their federal claims. For the reasons that follow, we affirm.
 
 I. BACKGROUND
 
 2
 The complaint, whose factual allegations are taken as true for purposes of reviewing a dismissal for failure to state a claim, alleged the following events. National Life was chartered by the State of Vermont ("State") in 1848, to operate as a mutual life insurance company, i.e., a company whose capital consists of premiums paid by policy holders for their mutual indemnification against loss and whose operation is for the sole benefit of policyholders. Plaintiffs were policyholders, or members, of the mutual company.
 
 
 3
 Section 3441 of the Vermont insurance law allows a domestic mutual insurance company to reorganize into a stock insurance company by a process known as "two-step demutualization," so long as certain procedures are followed and so long as the Commissioner concludes that the conversion will not be unfair to policyholders, or contrary to their financial interests, or contrary to the general good of the State. See Vt. Stat. Ann. tit. 8, § 3441. In this two-step process, the mutual insurance company becomes a stock insurance company that is controlled by a mutual holding company. The interests of the policyholders are then divided between the two companies: their contracts of insurance remain with the insurer, which has become a stock company; but they have membership only in the holding company rather than directly in the insurance company. Following such a reorganization, the insurance company is able to raise capital by selling stock and is thereafter operated for the benefit of its stockholders, not for the sole benefit of its policyholders.
 
 
 4
 In order to effect such a demutualization, the reorganization plan must first be adopted by a two-thirds vote of the company's board of directors. See Reg. 97-5, § 6(C), Mutual Insurance Holding Companies, Vt.Code R. 21-020-041 (2002). Then the company must, inter alia, obtain approval from two-thirds of its voting policyholders and from the Commissioner. See id. §§ 6(C) and 6(E)(5).
 
 
 5
 In 1998, National Life's board of directors unanimously approved a plan for the two-step demutualization of National Life. National Life would become a stock corporation; it would be wholly owned by NLV Financial, also a stock corporation; and NLV Financial would be owned by National Life Holding, a mutual company. Policyholders of the former mutual insurance company would no longer be members of the insurance company but would instead be members of National Life Holding.
 
 
 6
 National Life filed the documentation called for by § 3441 with the Commissioner and, as required, gave notice of the proposed reorganization, in summary form, to policyholders and the public. The Commissioner held a public hearing to allow public comment on the proposal and undertook an intensive review of the proposed reorganization. The Commissioner found that all of the required information had been disclosed and that the plan would not be unfair to policyholders or contrary to their financial interests and would not be contrary to the general good of the State.
 
 
 7
 Accordingly, the Commissioner approved the reorganization plan. National Life provided policyholders with a copy of the plan, along with informational materials that stated, "The Plan has been approved by the Commissioner. The Commissioner's approval is not an endorsement of the Plan, nor a recommendation to vote in favor of the Plan." National Life, Policyholder Information Statement, Oct. 12, 1998, at i (emphasis in original). The plan was approved by policyholders in November 1998.
 
 
 8
 Plaintiffs thereafter commenced actions in the district court, which were consolidated, on behalf of themselves and similarly situated policyholders, against National Life, its affiliates, officers, and directors, and against the Commissioner. The consolidated complaint alleged, inter alia, that § 3441, both facially and as applied, violated the Contracts Clause of Article I of the Constitution and deprived plaintiffs of due process, and that the conversion constituted an illegal taking in violation of the Fourteenth Amendment.
 
 
 9
 Defendants moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim on which relief can be granted. They argued that plaintiffs' federal claims must be dismissed principally on the ground that the complaint failed to allege facts sufficient to show state action and that, in any event, it failed to show any deprivation of property or impairment of contract rights.
 
 
 10
 In an opinion reported at 144 F.Supp.2d 291 (2001), the district court granted the motion to dismiss. It ruled that the complaint failed to state a viable facial challenge, finding that § 3441 "merely prescribes a procedure for undertaking reorganization if the company and its policyholders approve" and that the statute "has not diminished the contractual rights of the Plaintiffs," 144 F.Supp.2d at 302, "does not deprive policyholders of ownership rights," id., and does not deprive policyholders of any other interest that might offend due process requirements, id. at 303. The court dismissed the as-applied challenges for lack of a viable allegation of state action because "[t]he decision to reorganize was based on business judgments made by private parties," and because the Commissioner's actions consisted merely of approving National Life's proposed reorganization plan subject to policyholder approval, authorizing a policyholder vote on the plan, and approving the notice that was to be sent to policyholders. Id. at 304. Having dismissed all of the federal claims, the court dismissed plaintiffs' state-law claims without prejudice.
 
 
 11
 Judgment was entered accordingly, and this appeal followed.
 
 II. DISCUSSION
 
 12
 On appeal, plaintiffs contend principally that the district court erred in finding that they had not been injured simply by the enactment of § 3441 and in finding a lack of state action in the statute's application. For the reasons that follow, we disagree and affirm the judgment of the district court.
 
 A. The Facial Challenges
 
 13
 In order to succeed on a facial challenge to a statute, the plaintiff must, with exceptions not pertinent here, "establish that no set of circumstances exists under which the [challenged] Act would be valid." United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); see, e.g., Kittay v. Giuliani, 252 F.3d 645, 647 (2d Cir.2001) (per curiam). A plaintiff making a facial claim faces an "uphill battle" because "it is difficult to demonstrate that mere enactment of a piece of legislation" violates the plaintiff's constitutional rights. Suitum v. Tahoe Regional Planning Agency, 520 U.S. 725, 736 n. 10, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997) (internal quotation marks omitted).
 
 
 14
 In the instant case, there is no question that the conversion of National Life from a mutual company to a stock company did not occur upon the passage of § 3441. The reorganization could not occur without action by the company's board of directors and its policyholders. Therefore, the mere enactment of the statute was insufficient to trigger the alleged injury. The district court properly dismissed plaintiffs' facial challenges.
 
 B. The As-Applied Challenges
 
 15
 As discussed in our opinion issued today in Tancredi v. Metropolitan Life Insurance Co., 316 F.3d 308 (2d Cir.2002) (affirming dismissal of complaint that alleged that demutualization procedure allowed by New York law constituted violations of the Takings, Contracts, Due Process, and Commerce Clauses of the Constitution), in order to mount a federal constitutional challenge to the conversion of a mutual insurance company to a stock company, a plaintiff must show that the reorganization constituted state action. "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes `state action.'" United States v. International Brotherhood of Teamsters, 941 F.2d 1292, 1295 (2d Cir.1991). Thus, state action is a necessary component of any Contracts Clause claim, see, e.g., Sanitation & Recycling Industry v. City of New York, 107 F.3d 985, 992-93 (2d Cir.1997) (Contracts Clause limits the power of the States, not of private entities), and of any Fourteenth Amendment due process or takings claim, see, e.g., Jackson v. Metropolitan Edison Co. 419 U.S. 345, 349, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (Fourteenth Amendment offers "no shield" against private conduct, no matter how discriminatory or wrongful); Story v. Green, 978 F.2d 60, 62 (2d Cir.1992) ("To state a claim under either the Due Process Clause or the Takings Clause, plaintiffs [a]re required to allege facts showing that state action deprived them of a protected property interest.").
 
 
 16
 "[S]tate action requires both an alleged constitutional deprivation `caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' and that `the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" American Manufacturers Mutual Insurance Co. v. Sullivan, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)) (emphases in original). Under the latter requirement, a plaintiff must show that the allegedly unconstitutional conduct is "fairly attributable" to the state. American Manufacturers Mutual Insurance Co. v. Sullivan, 526 U.S. at 50, 119 S.Ct. 977.
 
 
 17
 For the conduct of a private entity to be "fairly attributable" to the state, there must be "such a `close nexus between the State and the challenged action' that seemingly private behavior `may be fairly treated as that of the State itself.'" Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (quoting Jackson v. Metropolitan Edison Co., 419 U.S. at 351, 95 S.Ct. 449). "The purpose of [the close-nexus] requirement is to assure that constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (emphasis in original).
 
 
 18
 The determination of whether the specific conduct of which the plaintiff complains constitutes state action is a "necessarily fact-bound inquiry." Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, 531 U.S. at 298, 121 S.Ct. 924 (internal quotation marks omitted). A challenged activity by a private entity may be deemed state action when the state exercises "coercive power," is "entwined in [the] management or control" of the private actor, or provides the private actor with "significant encouragement, either overt or covert," or when the private actor "operates as a willful participant in joint activity with the State or its agents," is "controlled by an agency of the State," has been delegated a "public function" by the state, or is "entwined with governmental policies." See id. at 296, 121 S.Ct. 924 (internal quotation marks omitted).
 
 
 19
 In contrast, conduct by a private entity is not fairly attributable to the state merely because the private entity is a business subject to extensive state regulation or "affected with the public interest." Jackson v. Metropolitan Edison Co., 419 U.S. at 350, 353, 95 S.Ct. 449. A finding of state action may not be premised solely on the private entity's creation, funding, licensing, or regulation by the government. See, e.g., San Francisco Arts & Athletics, Inc. v. United States Olympic Committee, 483 U.S. 522, 543-44, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987). Nor is a private entity a state actor where its conduct is not compelled by the state but is merely permitted by state law. See, e.g., Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 164-66, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (no state action where private storage company threatened to sell plaintiff's stored goods, as authorized by state law, to cover unpaid storage fees); Jackson v. Metropolitan Edison Co., 419 U.S. at 350-51, 95 S.Ct. 449 (no state action where private electricity provider operated pursuant to state-granted monopoly). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." American Manufacturers Mutual Insurance Co. v. Sullivan, 526 U.S. at 52, 119 S.Ct. 977. The management of a corporation is not a public function; and a state's permission for a corporation to organize itself in a particular manner is not the delegation of governmental authority. See, e.g., Gayman v. Principal Financial Services, Inc., 311 F.3d 851 (7th Cir.2002) (no state action in demutualization of former mutual insurer's parent company).
 
 
 20
 In the present case, plaintiffs contend that state action may be found because § 3441's requirement that the Commissioner's approval be obtained for the reorganization makes the Commissioner a joint participant with National Life, or because the Commissioner's approval constitutes the exercise of coercive power of the State. We disagree. Given the statutory scheme that is challenged, the facts alleged in the complaint are insufficient to meet any of the above tests for state action.
 
 
 21
 For example, the State did not instigate the reorganization. The conversion was initiated by action of National Life's board of directors; and it was approved by the company's policyholders without any semblance of coercion, control, or encouragement from the State. Nor could it be said that the Commissioner was a participant in the National Life reorganization. Her functions were to analyze the reorganization plan to determine that the conversion would not prejudice policyholders or their financial interests, to determine that the demutualization would not be contrary to the general good of the State, and to ensure that the company provided policyholders with sufficient disclosure materials to permit their informed vote on the plan. The plan itself was voluntarily conceived, approved, and executed by the management and membership of a private company.
 
 
 22
 We conclude that the district court properly found that the allegations of the complaint were insufficient to show state action. We thus need not address plaintiffs' other contentions.
 
 CONCLUSION
 
 23
 We have considered all of plaintiffs' contentions on this appeal and have found in them no basis for reversal. The judgment of the district court is affirmed.
 
 
 
 Notes:
 
 
 *
 Honorable George B. Daniels, United States District Judge for the Southern District of New York, sitting by designation