Harley SCHNALL, individually and on behalf of all others similarly situated, Plaintiff–Appellant,

v.

MARINE MIDLAND BANK, Defendant–Appellee.

No. 1080, Docket 99–7924.

United States Court of Appeals, Second Circuit.

Argued: Jan. 12, 2000.

Decided: Aug. 24, 2000.

Alan A. Heller, New York, New York (Stuart A. Blander, Heller, Horowitz & Feit, P.C., on the brief), for Plaintiff–Appellant.

Paul K. Stecker, Buffalo, New York (Allen R. Bivens, Phillips, Lytle, Hitchcock, Blaine & Huber LLP, on the brief), for Defendant–Appellee.

Before: JACOBS, CALABRESI and KATZMANN, Circuit Judges.

JACOBS, Circuit Judge:

Credit-card customer Harley Schnall enjoyed the power to write line of credit ("LOC") checks under the terms of a Cardholder Agreement that treated such checks as creating loan obligations subject to certain disclosed terms. In 1998, defendant-appellee Marine Midland Bank mailed a supply of LOC checks that if used within a stated period would create loan obligations subject to a specially reduced interest rate (the "1998 LOC Checks" or "the LOC Offer"). Schnall, who did not use the 1998 LOC Checks during the term of the special offer, commenced this putative class action against Marine Midland on the grounds that the LOC Offer violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and implementing Federal Reserve Board Regulation Z ("Regulation Z"), 12 C.F.R. Part 226, because:

(A) his monthly statements, which are required to disclose all rates that could have been imposed, failed to disclose the promotional rate, and

(B) the LOC Offer omitted one of the disclosures required to be made by a bank offering an added credit feature or a supplemental credit device.

The complaint seeks, *inter alia*, "not more than $500,000 *for each failure* to comply with [TILA]" and "all costs and expenses incurred in connection with this lawsuit, including reasonable attorney's fees." Am. Compl. at 6 (emphasis in original). The United States District Court for the Southern District of New York (Stein, *J.*) dismissed Schnall's complaint, concluding that the disclosures demanded by Schnall were not required by TILA or by Regulation Z. We agree that the disclosures were not required and therefore affirm.

## BACKGROUND

### A. *Underlying Facts*

Since March 1995, Schnall had held a Marine Midland Gold MasterCard governed by a Cardholder Agreement which authorized him, *inter alia*, to write LOC checks, which "when transacted will be loans under our Loan Agreement, subject to all Loan terms and conditions." The "Loan Agreement" is a section of the Cardholder Agreement. The finance charges for both purchases and loans are set forth in a separate document entitled "Rate Disclosure." The Rate Disclosure specifies that the annual percentage rate ("APR") for purchases and loans is calculated by "add[ing] a 5.9% Spread to the Index Rate," as defined in the "Variable Rate Information" on the reverse of the Rate Disclosure. The APR for Schnall's Gold MasterCard account from January 1998 to March 1998 was 14.40% (calculated using an index rate of 8.5%, plus the 5.9% spread).

Marine Midland mailed a first batch of LOC checks to Schnall when his Gold MasterCard was issued in March 1995. The Bank sent Schnall additional LOC checks in July 1996.

On January 19, 1998, Marine Midland sent Schnall the LOC Offer and the supply of 1998 LOC Checks. The promotion letter disclosed that "[u]se of these checks will be treated as Loans under the Loan Agreement terms of your Cardholder

Agreement," but characterized the LOC Offer as "an exceptional money saving offer for a fixed Annual Percentage Rate (APR) of 7.9% or 8.9% on your Marine Midland Bank credit card account." Ex. A to Am. Compl. (The lower rate applied to checks over $2500.) Present credit-card customers (like Schnall) were invited to use "the attached Line of Credit checks to consolidate other credit card balances and transfer them to your Marine account. Balances transferred *will remain at this fixed rate until the loan has been paid off, unlike the usual three to six months other issuers offer.*" *Id.* (emphasis in original). The reduced fixed rates were available only "[b]y using the attached Line of Credit Checks by February 28, 1998." *Id.* The 1998 LOC Checks could be used at any time, but carried the reduced fixed rates only during the promotional period: "The 7.9% fixed APR and 8.9% fixed APR will apply only to the use of your LOC Checks and will remain in effect until the balance has been paid off. The LOC Checks must be posted to your account on or before 02/28/98. LOC Checks that post after this date will revert to your standard rate." *Id.*

Schnall used none of the 1998 LOC Checks until July and August 1998, at which time the APR was 14.40%.

### B. *Procedural History*

Schnall filed suit on behalf of himself and a putative class of other Marine Midland credit-card customers who had received the LOC Offer, alleging that Marine Midland violated TILA and Regulation Z by: (A) failing to disclose the periodic rate and the APR applicable to the LOC Offer in the monthly statements of customers who had not yet taken advantage of the Offer, as required by 12 C.F.R. § 226.7; and (B) failing to disclose the periodic rate in the LOC Offer's promotion letter, as required by 12 C.F.R. § 226.9. *See* Am. Compl. at 18–19.

Marine Midland moved to dismiss the complaint for failure to state a claim. The district court, accepting all of the factual allegations in Schnall's complaint as true, and considering Schnall's Cardholder Agreement and monthly credit card statements as integral to Schnall's claims, *see Schnall v. Marine Midland Bank,* No. 99 Civ. 0371, 1999 WL 498194, at *1 (S.D.N.Y. July 14, 1999), dismissed both of Schnall's claims:

(A) The district court concluded that 12 C.F.R. § 226.7 did not require Marine Midland to disclose the rates applicable to the LOC Offer in monthly statements sent to customers who had not yet taken advantage of the Offer. *See id.* at *3. The district court relied on Comment 7(d)–2 to 12 C.F.R. § 226.7, which provides that "[w]ith regard to the periodic [rate] disclosure (and its corresponding annual percentage rate), only rates that *could have* been imposed during the billing cycle reflected on the periodic statement need [to] be disclosed." *Id.* (quoting 12 C.F.R. § 226.7 cmt. 7(d)–2 (emphasis in original)) (internal quotation marks omitted). Because "the reduced rates could not be imposed" by Marine Midland on customers who had not yet used the 1998 LOC Checks, the district court determined that disclosure under 12 C.F.R. § 226.7 was not required. *Id.* "The fact that the customer was pre-approved to use the LOC checks does not change the fact that the only manner in which these reduced rates could apply is if the customer took the specified action." *Id.*

(B) The district court concluded that the disclosures in the LOC Offer's promotion letter were not governed by 12 C.F.R. § 226.9(b)—entitled "Disclosures for supplemental credit devices and additional features"—because the LOC Offer was neither an added credit feature nor a supplemental credit device. *See id.* at *2. First, "[a] cardholder, pursuant to the Cardholder Agreement, was already authorized to write LOC checks as loans prior to the [LOC Offer] being made. Therefore, the [LOC Offer] is

not an 'added' credit feature to which § 226.9(b) applies." *Id.* (footnote omitted). Second, the LOC Offer was not a "supplemental" credit device because "§ 226.9(b)(1) excludes a renewal or a resupply from the term credit device" and "the [1998 LOC Checks] were merely a 'resupply' of checks which, depending on their use, were no different than any other LOC checks provided to the card holders." *Id.* The district court concluded that the LOC Offer was governed by 12 C.F.R. § 226.9(c)—entitled "Change in terms"—which requires no disclosure when a change in terms involves a reduction of a finance charge. *See id.* (citing 12 C.F.R. § 226.9(c)(2)). Because the LOC Offer "was merely a reduction of a finance charge," the court concluded that no notice was necessary. *Id.*

## DISCUSSION

We review the district court's dismissal of Schnall's complaint *de novo*, accepting all of Schnall's factual allegations as true and drawing all reasonable inferences in his favor. *See South Road Assocs. v. IBM,* 216 F.3d 251, 252 (2d Cir. 2000); *Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir.2000). "The complaint should be dismissed only if there is no doubt that the plaintiff is unable to prove a set of facts which would entitle him to relief." *Hayden v. County of Nassau,* 180 F.3d 42, 47 (2d Cir.1999). Ordinarily our consideration is limited to the face of the complaint and documents attached to the complaint or incorporated by reference, but here we may also consult Schnall's Cardholder Agreement, account history and monthly statements because they are integral to his claims and Schnall had notice of that information. *See, e.g., Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir.1991). Furthermore, the district court considered this information, and Schnall does not contest that aspect of the district court's decision.

A. *Monthly Statements*

Section 127(b) of TILA, 15 U.S.C. § 1637(b), provides in relevant part:

(b) Statement required with each billing cycle

The creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth each of the following items to the extent applicable:

\* \* \* \* \* \*

(5) *Where one or more periodic rates may be used to compute the finance charge,* each such rate, the range of balances to which it is *applicable,* and . . . the corresponding nominal annual percentage rate determined by multiplying the periodic rate by the number of periods in a year.

15 U.S.C. § 1637(b)(5) (emphasis added). The corresponding regulation, 12 C.F.R. § 226.7, entitled "Periodic statement," is similar:

The creditor shall furnish the consumer with a periodic statement that discloses the following items, to the extent applicable:

\* \* \* \* \* \*

(d) Periodic rates. *Each periodic rate that may be used to compute the finance charge,* the range of balances to which it is *applicable,* and the corresponding annual percentage rate. If different periodic rates apply to different types of transactions, the types of transactions to which the periodic rates apply shall also be disclosed.

12 C.F.R. § 226.7(d) (footnotes omitted) (emphasis added). This wording supports the district court's conclusion that Marine Midland was not required to disclose the LOC Offer's rates in Schnall's monthly statements because those rates were not

(as of the monthly statement dates) rates that "may be used to compute the finance charge" on Schnall's Gold MasterCard account. 15 U.S.C. § 1637(b)(5); 12 C.F.R. § 226.7(d).

The district court's conclusion is also strongly supported by Comment 7(d)–2 to 12 C.F.R. § 226.7, and a pertinent example:

2. Disclosure of periodic rates required only if imposition possible. With regard to the periodic rate disclosure (and its corresponding annual percentage rate), only rates that *could have* been imposed during the billing cycle reflected on the periodic statement need to be disclosed. For example:

\* \* \* \* \* \*

● If the consumer has an overdraft line that might later be expanded upon the consumer's request to include secured advances, the rates for the secured advance feature need not be given *until such time as the consumer has requested and received access to the additional feature.*

12 C.F.R. § 226.7 cmt. 7(d)–2 (first emphasis in original; second emphasis added). The Comment and its example are suggestive because the Comment speaks of the required disclosure in terms of rates that "could have been imposed" in the billing cycle, and the example excludes from that category rates that are otherwise available but as to which the consumer has not requested and received access. However, Schnall's appellate challenge to the district court's analysis relies on Comment 7(d)–1, and the example provided thereunder:

1. Disclosure of periodic rates—whether or not actually applied. Any periodic rate that may be used to compute finance charges (and its corresponding annual percentage rate) must be disclosed whether or not it is applied during the billing cycle. For example:
● If the consumer's account has both a purchase feature and a cash advance feature, the creditor must disclose the

rate for each, even if the consumer only makes purchases on the account during the billing cycle.

*Id.* cmt. 7(d)–1.

These comments and examples are not as helpful as the drafters no doubt intended them to be. Schnall argues that any confusion aids his appeal, because TILA is to be construed liberally to effect its purpose of "assur[ing] a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." *N.C. Freed Co. v. Board of Governors of the Fed. Reserve Sys.,* 473 F.2d 1210, 1214 (2d Cir. 1973) (quoting 15 U.S.C. § 1601) (internal quotation marks omitted); *see also Begala v. PNC Bank,* 163 F.3d 948, 950 (6th Cir. 1998) ("We have repeatedly stated that TILA is a remedial statute and, therefore, should be given a broad, liberal construction in favor of the consumer."), *cert. denied,* —— U.S. ——, 120 S.Ct. 166, 145 L.Ed.2d 141 (1999); *Fairley v. Turan–Foley Imports, Inc.,* 65 F.3d 475, 479 (5th Cir.1995) ("Consistent with its purpose, [TILA] is meant to be construed liberally in favor of the consumer."); *Jackson v. Grant,* 890 F.2d 118, 120 (9th Cir.1989) (same).

The unaided text of TILA, however, requires the disclosure of multiple rates in a customer's monthly statement only where multiple rates "may be used to compute the finance charge." 15 U.S.C. § 1637(b)(5). This wording does not much assist Schnall because the LOC Offer's rates could not be used to compute his finance charge unless he took up the offer to use the 1998 LOC Checks within the stated time period, something Schnall did not do. Schnall's claim, if any, must therefore be based on any illuminating commentary supplied by the Federal Reserve Board.

The applicability of Comment 7(d)–1 in this case depends on an analogy between the LOC Offer and the cash advance feature in the comment's example: the argu-

ment is that if the rates for a cash advance feature must be disclosed even if no cash advances are taken in a given month, the rates for the LOC Offer likewise should also be disclosed even if no 1998 LOC Checks are drawn. The premise of the example, however, is that the account "has both" features, an invalid premise in Schnall's case.

If Schnall could use the checks he received in 1995 and 1996 to access the rates in the LOC Offer, Schnall's invocation of Comment 7(d)–1 would have some force. But the initial promotion letter that conveyed the LOC Offer provided, as Schnall emphasizes in the following passage from his post-argument submission, that "the customer was to use only the 'attached Line of Credit Checks' in order to invoke the promotional rate." The promotion letter was annexed to Schnall's complaint and incorporated into it by reference. It is undisputed that the promotional rates could be accessed no other way, and only in the limited time specified.

Schnall never requested and so never received access to the promotional rates. *See* 12 C.F.R. § 226.7 cmt. 7(d)–2. Thus, only the standard LOC rates could be applied to his account, and those rates were duly disclosed in his monthly statement. We therefore affirm the district court's dismissal of this claim because Schnall's monthly statements included all of the required disclosures.

This said, however, the commentary to 12 C.F.R. § 226.7(d) is unhelpful and confusing. We respectfully suggest that the comments and examples would benefit from a close review by the Federal Reserve Board, and that such a review may be needed to ensure the predictable application of TILA in future cases.

B. *Promotion Letter*

■ Because Schnall never took up the LOC Offer, the Offer's promotional rates were not rates that could have been charged to his account; for that reason, we rejected Schnall's claim that the pro-

motional rates should have appeared on his monthly statement. A second question on this appeal is whether the mailing of the LOC Offer and the 1998 LOC Checks required that Marine Midland disclose to Schnall the periodic rates in addition to the 7.9% and 8.9% APR rates that were disclosed (and promoted) in the mailing.

Section 127(a) of TILA, 15 U.S.C. § 1637(a), sets forth the initial disclosure requirements for open end consumer credit plans offering, *inter alia*, credit cards and LOC checks:

(a) Required disclosures by creditor

Before opening any account under an open end consumer credit plan, the creditor shall disclose to the person to whom credit is to be extended each of the following items, to the extent applicable:

(1) The conditions under which a finance charge may be imposed. . . .

(2) The method of determining the balance upon which a finance charge will be imposed.

(3) The method of determining the amount of the finance charge. . . .

(4) *Where one or more periodic rates may be used to compute the finance charge*, each such rate, the range of balances to which it is applicable, and the corresponding nominal annual percentage rate. . . .

15 U.S.C. § 1637(a) (emphasis added). The corresponding regulation, 12 C.F.R. § 226.6, provides that all new credit card customers must be provided with an "[i]nitial disclosure statement" that includes:

A disclosure of *each periodic rate* that may be used to compute the finance charge, the range of balances to which it is applicable, and the corresponding annual percentage rate.

12 C.F.R. § 226.6(a)(2) (footnotes omitted) (emphasis added). After the initial disclosure of, *inter alia*, each periodic rate, "[s]ubsequent disclosure requirements" are set out in 12 C.F.R. § 226.9. Subsection (a) concerns subsequent annual disclo-

sures of an account's billing rights statement. Subsection (b), on which Schnall relies, sets forth "Disclosures for supplemental credit devices and additional features":

> (1) If a creditor, within 30 days after mailing or delivering the initial disclosures under § 226.6(a), adds a credit feature to the consumer's account or mails or delivers to the consumer a credit device for which the finance charge terms are the same as those previously disclosed, no additional disclosures are necessary. *After 30 days,* if the creditor adds a credit feature or furnishes a credit device (other than as a renewal, resupply, or the original issuance of a credit card) *on the same finance charge terms,* the creditor shall disclose, before the consumer uses the feature or device for the first time, that it is for use in obtaining credit under the terms previously disclosed.
>
> (2) Whenever a credit feature is added or a credit device is mailed or delivered, and *the finance charge terms for the feature or device differ from disclosures previously given, the disclosures required by § 226.6(a) that are applicable* to the added feature or device shall be given before the consumer uses the feature or device for the first time.

12 C.F.R. § 226.9(b) (emphasis added). Subsection (c) then governs "change in terms":

> (1) Written notice required. *Whenever any term required to be disclosed under § 226.6 is changed* or the required minimum periodic payment is increased, the creditor shall mail or deliver written notice of the change to each consumer who may be affected....
>
> (2) Notice not required. *No notice under this section is required when the change involves* late payment charges, charges for documentary evidence, or over-the-limit charges; *a reduction of any component of a finance or other charge;* suspension of future credit privileges or termination of an account or plan; or when the change results from

an agreement involving a court proceeding....

*Id.* § 226.9(c) (emphasis added).

Assuming for purposes of this appeal that the LOC Offer and the 1998 LOC Checks amounted to an additional credit feature or a supplemental credit device, or both, we conclude from the foregoing texts that:

1.  Whether or not Schnall took up the LOC Offer, the disclosures, if any, applicable to the Offer were governed by 12 C.F.R. § 226.9 and were required to be made when the LOC Offer was delivered, *i.e.,* before Schnall as a consumer could access the promotional rate by using the 1998 LOC Checks during the specified time period. *See* 12 C.F.R. § 226.9(b), (c)(1).

2.  Such disclosures applicable to the LOC Offer would include periodic rates, which were not disclosed in the LOC Offer mailing. *See id.* § 226.6(a)(2).

3.  Under the LOC Offer, there would be a change in terms *if* the consumer used the 1998 LOC Checks within the specified period of time.

4.  The change in terms that the LOC Offer presented, however, was a *reduction* in the finance charge.

5.  By virtue of 12 C.F.R. § 226.9(c)(2), such a reduction in the finance charge does not entail any disclosure obligation under § 226.9.

We therefore agree with the district court that Marine Midland was not required to disclose the periodic rates applicable to the LOC Offer in the LOC Offer's promotion letter. Schnall argues that the district court's reliance on § 226.9(c)(2) was misplaced because that subsection's notice exemption applies only to § 226.9(c), not the entirety of § 226.9. However, as set forth above, the plain language of § 226.9(c)(2) states that "[n]o notice under this *section* is required." Throughout Regulation Z, the term "section" is used to refer to numeric designations such as § 226.9, whereas the term "paragraph" is

used to refer to designations such as § 226.9(c)(1). *See, e.g.,* 12 C.F.R. §§ 226.4(b), 226.5a(a)(1)-(2), 226.9(a)(2). The notice exemption therefore applies to the entirety of § 226.9 and defeats Schnall's claim.

\* \* \* \* \* \*

In summary, even if the LOC Offer and the 1998 LOC Checks amounted to an additional credit feature or supplemental credit device, or both, Marine Midland was not required to disclose the periodic rates applicable to the Offer and Checks because the only change in terms they carried was a reduction of rates as to which TILA requires no notice. Moreover, because the LOC Offer was not accepted by Schnall until after the promotional rate expired, the promotional rate could not have been applied to Schnall's account and therefore need not have been disclosed on Schnall's monthly statements.

## CONCLUSION

The judgment of the district court dismissing Schnall's complaint is affirmed.