[Cite as *CitiMortgage, Inc. v. Rudzik*, 2014-Ohio-1472.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| CITIMORTGAGE, INC., | ) | |
| | ) | CASE NO.    13 MA 20 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| JOSEPH RUDZIK, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |


CHARACTER OF PROCEEDINGS:          Civil Appeal from Common Pleas Court,
                                   Case No. 12CV2113.


JUDGMENT:                          Affirmed in part; Reversed and
                                   Remanded in Part.


APPEARANCES:
For Plaintiff-Appellee:            Attorney John Greiner
                                   Attorney Brittany Griggs
                                   1900 Fifth Third Center
                                   511 Walnut Street
                                   Cincinnati, Ohio  45202-3157

For Defendants-Appellants:         Attorney Rhys Cartwright-Jones
                                   42 North Phelps Street
                                   Youngstown, Ohio  44503-1130


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro


                                   Dated:  March 31, 2014

VUKOVICH, J.

**{¶1}** Defendants-appellants Joseph Rudzik and Erika Kieffer, n.k.a. Rudzik, appeal the decision of the Mahoning County Common Pleas Court granting plaintiff-appellee CitiMortgage, Inc.'s Civ.R. 12(B)(6) motion to dismiss appellants' counterclaims. Four issues are raised in this appeal. The first is whether there is a civil cause of action for theft when the person being accused of theft has not been convicted criminally of the offense. The second issue is whether under the Truth in Lending Act (TILA) a creditor is required to make disclosures when a "trial period" for loan modification is entered into by the parties. The third issue is whether the Rudziks have pled all of the necessary elements of a Fair Credit Reporting Act (FCRA) claim to survive a Civ.R. 12(B)(6) motion. The fourth issue is whether the complaint sufficiently pled a Consumer Sales Practices Act (CSPA) violation.

**{¶2}** For the reasons expressed below, the second, third, and fourth issues have no merit, and thus, the trial court's dismissal of the TILA, FCRA and CSPA claims are hereby affirmed. Regarding the first issue, this argument has merit. Pursuant to R.C 2307.60 and 2307.61, there is a civil cause of action for damages that result from a theft offense. Furthermore, R.C. 2307.61(G) specifically indicates that recovery of damages in a civil action for a theft offense does not require a criminal conviction. Thus, taking all factual allegations in the counterclaim as true and considering all reasonable inferences, the counterclaim adequately pled a theft offense. Consequently, the trial court's decision to dismiss the theft counterclaim on a Civ.R. 12(B)(6) motion is hereby reversed and the cause is remanded for further proceedings.

### Statement of the Case

**{¶3}** In August 2007, a mortgage and note were executed for the property located at 220 Maplewood Avenue, Struthers, Mahoning County, Ohio. Union Capital Mortgage was listed as the lender and Joseph Rudzik and Erika Kieffer were listed as the borrower. That mortgage and note were eventually assigned to appellee.

{¶4} In July 2012, CitiMortgage brought a foreclosure action against the Rudziks claiming that they were in default on their note. In response to the complaint, the Rudziks filed an answer and counterclaim. 08/21/12 and 09/04/12 Answer and Counterclaim. In the counterclaim, they factually assert that in 2009 they learned about home loan modifications and inquired of CitiMortgage as to whether they would be eligible for such a program. Allegedly CitiMortgage informed them that they would likely be eligible and solicited an application from the Rudziks. Thereafter, the Rudziks talked to a "specialist" from CitiMortgage on multiple occasions and were told that they qualified for modification. The parties then allegedly entered into a "trial period" where the date of the Rudziks' payments changed and the amount was reduced. The Rudziks contend that they faithfully made the reduced payments. After months passed, the Rudziks received a letter saying they were late on their payments. They claim that they called the "specialist" and she allegedly told them to ignore the letter. They then proceeded to pay the reduced amount. A later conversation revealed that the "trial period" payments were put in escrow. The Rudziks claim that this action was done to cause them to default on the loan. CitiMortgage then moved for foreclosure and stopped accepting payments, even though according to the Rudziks they made the payments on time in the amount told to them by CitiMortgage.

{¶5} Based on these facts, the Rudziks asserted four counterclaims. First, they contended that CitiMortgage is civilly liable for theft and embezzlement under Revised Code Chapters 2913 and 2307. Second, they asserted that CitiMortgage violated the Truth in Lending Act (TILA) when it failed to make disclosures prior to the "trial period" of the loan modification. Consequently, they contend CitiMortgage is liable for monetary damages under the TILA. Third, they assert that CitiMortgage violated the Fair Credit Report Act (FCRA) and that they are entitled to monetary damages under that act. Lastly, they asserted that CitiMortgage violated the Consumer Sales Practices Act (CSPA) because CitiMortgage's actions were deceptive and unconscionable practices under the CSPA. Specifically, the violations of TILA and FCRA and CitiMortgage's deliberate intent or reckless institutional

incompetence baited and deceived the Rudziks into reliance on the "specialist's" representations.

{¶6} In response to the counterclaim, CitiMortgage filed a motion to dismiss based on Civ.R. 12(B)(6), failure to state a claim upon which relief can be granted. It asserted that the "theft and embezzlement" action fails because Revised Code Chapter 2307 does not create a cause of action. Furthermore, it asserted that a criminal violation cannot support a finding of civil liability unless it was actually convicted of the referenced crime. In regards to the TILA claim, it asserted that such a claim is barred by the statute of limitations and that even if it was not, the TILA disclosures do not apply to trial periods or loan modifications. In regards to the FCRA, it claims that the Rudziks failed to plead the satisfaction of the condition precedent to bring the claim. Lastly, as to the CSPA claim, it asserted that the claim was not pled sufficiently and that the claims are preempted by the TILA and FCRA.

{¶7} The Rudziks filed a motion in opposition. 12/10/12 Opposition Brief. CitiMortgage then filed a reply brief. 12/31/12 Reply Brief. After considering each party's arguments, the trial court sustained the motion and dismissed all counterclaims. 01/22/13 J.E.; 04/05/13 J.E. Thus, the only claim remaining before the trial court was CitiMortgage's foreclosure cause of action.

{¶8} The Rudziks filed a timely notice of appeal from those orders.

Assignment of Error

{¶9} "The Trial Court erred in granting the appellee's motion to dismiss, where the complaint allowed a plausible set of facts giving rise to relief."

{¶10} A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted is a procedural motion that tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992). In order to dismiss a complaint for failure to state a claim upon which relief can be granted, the court must find beyond doubt that appellant can prove no set of facts warranting relief after it presumes all factual allegations in the complaint are true, and construes all reasonable inferences in appellant's favor. *State ex rel. Seikbert v. Wilkinson*, 69 Ohio St.3d 489, 490, 633 N.E.2d 1128 (1994). Therefore, the standard of review for a Civ.R. 12(B)(6) motion

to dismiss is de novo; the appellate court is required to independently review the complaint or counterclaim to determine if the dismissal was appropriate. *Ferreri v. Plain Dealer Publishing Co.*, 142 Ohio App.3d 629, 639, 756 N.E.2d 712 (8th Dist.2001).

{¶11} As aforementioned, the Rudziks asserted four counterclaims. Each will be addressed in turn.

### 1. Theft

{¶12} At the outset it is noted that the Rudziks' counterclaim is for both "theft" and "embezzlement." Embezzlement has been codified in the theft statute in R.C. 2913.02(A)(2). *State v. Dobbins*, 4th Dist. No. 11CA6, 2011-Ohio-6777, ¶ 14, citing *State v. Dortch*, 2d Dist. No. 17700, 1999 WL 819569 (Oct. 15, 1999). Thus, in referring to this cause of action it will be referred to solely as theft since theft encompasses embezzlement.

{¶13} Their theft counterclaim is based on R.C. 2307.60 and 2307.61. These provisions provide:

> (A)(1) Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code.

R.C. 2307.60(A)(1).

> (A) If a property owner brings a civil action pursuant to division (A) of section 2307.60 of the Revised Code to recover damages from any person who willfully damages the owner's property or who commits a theft offense, as defined in section 2913.01 of the Revised Code, involving the owner's property, the property owner may recover as follows: * * *

R.C. 2307.61(A).

{¶14} The Rudziks contend that these two sections create a civil action for willful damage or theft. CitiMortgage agrees that these provisions create a civil action for theft offenses as defined in R.C. 2913.01. From the plain language of the statute, both parties are correct in their positions; a reading of the two provisions does appear to create a civil action for theft as defined in R.C. 2913.01.

{¶15} CitiMortgage, however, contends that even though a civil action for theft offenses as defined in R.C. 2913.01 exists, the matter was still properly dismissed for two reasons. First, it contends that the facts asserted by the Rudziks do not amount to a theft offense as defined in R.C. 2913.01. Second, it contends that it is well-settled that a criminal violation cannot support a finding of liability for a civil claim unless the defendant was actually convicted of the referenced crime.

{¶16} Starting with CitiMortgage's first position, we must determine, presuming all factual allegations in the complaint are true, if those facts fit into the definition of one of the theft offenses as defined in R.C. 2913.01. That section states:

(K) "Theft offense" means any of the following:

(1) A violation of section 2911.01, 2911.02, 2911.11, 2911.12, 2911.13, 2911.31, 2911.32, 2913.02, 2913.03, 2913.04, 2913.041, 2913.05, 2913.06, 2913.11, 2913.21, 2913.31, 2913.32, 2913.33, 2913.34, 2913.40, 2913.42, 2913.43, 2913.44, 2913.45, 2913.47, 2913.48, former section 2913.47 or 2913.48, or section 2913.51, 2915.05, or 2921.41 of the Revised Code;

R.C. 2913.01(K)(1).

{¶17} A review of all of these sections reveals that at least one of those statutes could potentially apply, R.C. 2913.02, theft. Section (A)(2) and (3) of that statute states:

No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

* * *

(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

(3) By deception;

R.C. 2913.02(A)(2), (3).

{¶18} As previously stated, (A)(2) is a codification of the common law crime of embezzlement. Typically, embezzlement occurs when an employee steals money from its employer. Section (A)(2) is not specific just to the typical embezzlement, it can also apply any time a person acts beyond the scope of the consent of the owner.

{¶19} The factual allegations asserted in the counterclaim were that the Rudziks asked CitiMortgage whether they were eligible for a home loan modification. CitiMortgage told them there was a program and solicited an application from them. In completing the applications, they had a number of conferences with a specialist from CitiMortgage. The Rudziks were told that they qualified and that they would be entering a trial period and they were to make a specified reduced payment during the trial period. They did this. After months of making the reduced payments, they received a letter saying that they were late on the payments, which seemed "odd" to them since they never missed a payment. The Rudziks then called the specialist who told them to ignore the letter and that everything was under control. They continued to make the reduced payments. A subsequent conversation with CitiMortgage revealed that the trial period payments were put in escrow. This caused the Rudziks to default on the loan. As a result, CitiMortgage moved to foreclose.

{¶20} Considering these allegations and the logical inferences drawn from them, the Rudziks could be claiming that CitiMortgage acted beyond the scope of their express or implied consent. The Rudziks were consenting for the trial period payments to be used to pay the loan; this was an agreement for a loan modification with a reduced payment. The Rudziks were under the impression that a permanent modification was forthcoming. However, CitiMortgage put the trial period payments in escrow. This was beyond the scope of what the Rudziks agreed to. Furthermore, there is an allegation that it was done for the purpose of causing the Rudziks to default on the loan. Possibly, this may fit theft by deception. According to the Rudziks, they were told to pay a reduced payment during the trial period, and they did that. However, CitiMortgage took that money and put it in escrow as a means to cause them to default on the loan.

**{¶21}** Given the asserted facts and logical inferences, we hold, for purposes of reviewing this cause of action against a failure to state a claim attack, that this complaint adequately raises a theft cause of action.

**{¶22}** CitiMortgage contends that even if we hold as such, the cause of action was still properly dismissed. According to CitiMortgage, it is well-settled that a criminal violation cannot support a finding of liability for a civil claim unless the alleged offender was actually convicted of the referenced crime. CitiMortgage cites case law in support of its position.

**{¶23}** Although it does cite us to case law supporting its position, our analysis starts with provision (G) in R.C. 2307.61. That section provides:

> (G)(1) In a civil action to recover damages for willful property damage or for a theft offense, the trier of fact may determine that an owner's property was willfully damaged or that a theft offense involving the owner's property has been committed, whether or not any person has pleaded guilty to or has been convicted of any criminal offense or has been adjudicated a delinquent child in relation to any act involving the owner's property.

R.C. 2307.61(G)(1).

**{¶24}** This section clearly indicates recovery of damages in a civil action for a theft offense is not dependent upon a criminal conviction.

**{¶25}** The cases cited by CitiMortgage either disregard this section and/or do not deal with a theft offense. *Cook v. Criminger*, 9th Dist. No. 22313, 2005-Ohio-1949, ¶ 15 (there was a theft offense, however, no discussion of the implications of R.C. 2307.61(G)(1)); *Tri-State Computer Exchange, Inc. v. Burt*, 1st Dist. No. C-0200345, 2003-Ohio-3197, ¶ 22-23 (no discussion of the implications of R.C. 2307.61(G)(1) and it does not appear that there were theft offenses); *Hite v. Brown*, 100 Ohio App.3d 606, 611, 654 N.E.2d 452 (8th Dist.1995) (no discussion of R.C. 2307.61(G)(1) and the allegations were based on sexual battery, not theft); *Ivancic v. Cleveland Elec. Illum. Co.*, 8th Dist. No. 63372, 1993 WL 367092 (coercion, not theft offenses and no discussing of R.C. 2307.61(G)(1)). Furthermore, these cases are

appellate court cases that are not from our district and as such are not binding upon us. At most these cases could potentially provide persuasive authority.

**{¶26}** That said, we find no guidance from them because they do not consider the language of R.C. 2307.61(G)(1). An independent review reveals that there is authority from one of our sister districts that considered R.C. 2307.61(G)(1), in the context of a theft offense. *H & W Door Co. v. Stemple*, 11th Dist. No. 93-P-0031, 1994 WL 116257. That court stated, "It is clear that R.C. 2307.61 is a civil remedy and that it is available even though the defendant has not pled guilty to, or been convicted of, any criminal offense in relation to any act involving the owner's property." *Id*. Considering the language of R.C. 2307.61(G)(1) that statement appears to be correct.

**{¶27}** Consequently, given the above, and specifically relying on the clear language of R.C. 2307.61(G)(1), we hold that a criminal conviction is not required.

**{¶28}** Therefore, since the counterclaim raised a valid theft cause of action, the trial court erred when it dismissed the theft counterclaim; no criminal conviction is required to maintain a civil cause of action for damages caused by a theft offense.

## 2. TILA

**{¶29}** The second counterclaim asserts a Truth in Lending Act cause of action, 15 U. S. C. 1601, et seq. The Rudziks claim that the loan modification and trial period was an extension of credit by CitiMortgage. Therefore, they assert that under the TILA certain disclosures were required to be made. For instance, the annual percentage rate, the term of the loan, the length of the trial period, and the total costs to appellants. By failing to disclose those terms, the Rudziks allege that CitiMortgage violated the TILA. While they acknowledge that the one year statute of limitations has run, they assert that a discovery period should apply.

**{¶30}** In response, CitiMortgage asserts that home loan modifications are not extensions of credit as defined by the TILA and thus, there is no requirement for disclosures. Furthermore, even if it is and there are required disclosures, the one year statute of limitations has run. Therefore, the claim is untimely. It asserts that a discovery period for tolling the statute of limitations is not needed because the TILA claim is based solely on the allegation that appellee failed to make disclosures at the

time the trial modification was offered in 2009. Any alleged violation could have been discovered upon reasonable inspection.

**{¶31}** CitiMortgage cites numerous cases that are directly on point. Admittedly, those cases are not from this district, the Ohio Supreme Court or the Federal Sixth Circuit Court of Appeals.

**{¶32}** The starting point for the discussion of whether the TILA has been violated is to look at the TILA and what is it intended to do. The District Court of Vermont has succinctly explained:

> The TILA is a consumer protection act that seeks to "avoid the uninformed use of credit." 15 U.S.C. § 1601(a). It is designed to help a consumer more readily compare "the various credit terms available to him[.]" *Schnall v. Marine Midland Bank*, 225 F.3d 263, 267 (2d Cir.2000) * * * "To this end, the TILA requires creditors to disclose clearly and accurately all the material terms of a credit transaction." *Palmer*, 465 F.3d at 27 * * * "Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying [c]ongressional purpose is to be effectuated." *N.C. Freed Co.*, 473 F.2d at 1214 (citations omitted). Creditors who fail to comply with the TILA disclosure requirements are subject to civil liability. See 15 U.S.C. § 1640(a). However, despite its broad protections, the TILA "is not a general prohibition of fraud in consumer transactions or even in consumer credit transactions. Its limited office is to protect consumers from being misled about the cost of credit." *Gibson v. Bob Watson Chevrolet-Geo, Inc.*, 112 F.3d 283, 285 (7th Cir.1997).
>
> Pursuant to its authority "to elaborate and expand the legal framework governing commerce in credit" the Federal Reserve Board has implemented governing regulations under the TILA, commonly referred to as "Regulation Z." 12 C.F.R. part 226 (1999); *see also Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559-60 (1980). Regulation Z mandates that disclosures be made clearly and conspicuously in writing and include, among other things, the amount financed, the

finance charge, the annual percentage rate, total payments and total

sale price. See 12 C.F.R. §§ 226.17(A), 226.18(B), (d), (e), (g), (j).

*Norton-Griffiths v. Wells Fargo Home Mortg.*, D.Vt. 5:10-CV-169, 2011 WL 61609 (Jan. 4, 2011).

**{¶33}** TILA provides borrowers with two remedies for disclosure violations: (1) rescission, 15 U.S.C. 1635(A), and (2) damages, 15 U.S.C. 1640. The action for damages, which is what is sought in this case, has a one year statute of limitations. *Washington v. Natl. City Mortg., Co.*, N.D. Cal. No. C 10-5042 SBA, 2011 WL 1842836 (May 16, 2011).

**{¶34}** With that basic understanding of TILA, we now turn to the question of whether this "trial period" that was implemented required TILA disclosures.

**{¶35}** In *Norton-Griffith*, the Forbearance Agreement temporarily modified the amount of the monthly mortgage payment for a four month trial period. The Vermont Federal District Court stated that this temporary modification did not require TILA disclosures. *Norton-Griffiths v. Wells Fargo Home Mortg.*, D.Vt. 5:10-CV-169, 2011 WL 61609 (Jan. 4, 2011). It cited a bankruptcy court case for the proposition that an agreement with respect to the principal reduction does not constitute refinancings that require new TILA disclosure because the existing obligation was not satisfied or replaced by the reduction agreement. *In re Hart*, 246 B.R. 709, 738 (Bankr. D.Mass.2000). Furthermore, the *Norton-Griffith* decision stated that even if the "trial period" was considered a loan modification agreement, it would still be exempt from the TILA disclosure requirements because a loan modification does not constitute an extension of new credit or a "refinancing." *Norton-Griffiths*, citing 12 C.F.R. 226.20(A)(2) (excluding from the disclosure requirements for "refinancings" "[a] reduction in the annual percentage rate with a corresponding change in the payment schedule"). *See also Diamond v. One West Bank*, D.Ariz. No. CV-09-1593-PHX-FJM, 2010 WL 1742536 (Apr. 29, 2010) ("A loan modification does not require additional TILA disclosures, particularly where no new monies are advanced."); *Sheppard v. GMAC Mortg. Corp.*, 299 B.R. 753, 760-63 (Bankr.E.D.Pa.2003) (loan modification was not a refinancing under 12 C.F.R. 226.20(A) and therefore defendant did not have to provide TILA disclosures, even when additional sum was

added to plaintiffs' original loan amount, as new obligation did not completely replace the prior one); *Castrillo v. Am. Home Mortg. Servicing, Inc.*, 670 F.Supp.2d 516, 528 (E.D.La.2009) (holding that where a loan modification agreement does not "completely replace" an earlier mortgage, but rather "amends and supplements" it, the document does "not give rise to disclosure requirements or rescission rights under TILA."); *Washington v. Natl. City Mortg., Co.*, N.D. Cal. No. C 10-5042 SBA, 2011 WL 1842836 (May 16, 2011) (same); *Green v. CitiMorgage, Inc.*, W.D.Vir. No. 5:11CV032, 2011 WL 5866230 (TILA disclosure requirements do not apply to forbearance or loan modification agreements that simply reduce the interest rate and payment schedule of a loan).

**{¶36}** Here, it appears from the pleadings that this "trial period" or loan modification, never replaced the earlier mortgage. Specifically, by referring to it as a trial period, it must be concluded that the modification was temporary and not permanent. Furthermore, typically trial periods precede approval of a loan modification. If a loan modification itself does not require disclosures under the TILA then it would follow that a "trial period" that precedes the approval of the loan modification would likewise not require disclosure under TILA. Thus, considering the above cases, we conclude that the trial court properly dismissed this claim.

**{¶37}** However, that is not the only reason the trial court properly dismissed the claim. As discussed above, there is a one year statute of limitations for seeking damages for a TILA violation. The Rudziks' counterclaim indicates that the attempt to have a loan modification began in 2009. However, the counterclaim was not filed until September 2012. Thus, the statute of limitations had expired.

**{¶38}** The Rudziks want this court to find that a discovery period is applicable. In *Washington*, the Federal Northern District Court of California recognized that in the context of a TILA damages claim, equitable tolling can "suspend the limitations period until the borrower discovers or had a reasonable opportunity to discovery the fraud or nondisclosures that form the basis of the * * * action." *Washington*, N.D.Cal. No. C 10-5042 SBA, 2011 WL 1842836. It then stated, "The salient question is whether 'the TILA violations alleged could * * * have been discovered by due diligence during

the one-year statutory period[.]" *Id.*, quoting *Lingad v. Indymac Federal Bank*, 682 F.Supp.2d 1142, 1147 (E.D.Cal.2010).

**{¶39}** In *Washington*, the reason the Plaintiffs had for failing to discover the alleged nondisclosures were they "did not have any reason to question Defendants' motives or tactics until things began to go wrong." *Id.* This is similar to the reason provided in this case. Here, they did not check for the possibility of nondisclosures until the foreclosure. From their allegations and briefs, there is nothing to indicate that there was any impediment to their ability to discover the alleged TILA violations within the one year period. The fact that things did not go wrong until later does not provide a basis for tolling the statute of limitations.

**{¶40}** Therefore, the trial court also properly dismissed the TILA claim because the statute of limitations had expired. Consequently, for the above reasons, the TILA claim was properly dismissed.

### 3. FCRA

**{¶41}** The Rudziks' Fair Credit Reporting Act claim is based on 15 U.S.C. 1681s-2(a) and (b). In the appellate brief, they correctly admit that there is no individual right of action under (a). Therefore, our analysis is directed solely to division (b) and whether the pleadings were sufficient. 15 U.S.C. 1681s-2 is titled Responsibilities of Furnishers of Information to Consumer Reporting Agencies. Section (b) provides:

> (b) Duties of furnishers of information upon notice of dispute
>
> (1) In general
>
> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>
> **(A)** conduct an investigation with respect to the disputed information;
>
> **(B)** review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

**(C)** report the results of the investigation to the consumer reporting agency;

**(D)** if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

**(E)** if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

**(i)** modify that item of information;

**(ii)** delete that item of information; or

**(iii)** permanently block the reporting of that item of information.

15 U.S.C. 1681s-2(b)(1).

**{¶42}** The Southern District Court of Ohio in discussing 15 U.S.C. 1681s-2(b) has explained:

The Fair Credit Reporting Act is remedial legislation, which is to be liberally construed in favor of consumers. See *Jones v. Federated Fin. Reserve Corp.,* 144 F.3d 961 (6th Cir.1998). Simply stated, FCRA regulates the communication of consumer reports by credit reporting agencies. 15 U.S.C. § 1681 et seq. The FCRA places specific requirements upon individuals and entities that qualify as consumer reporting agencies when they communicate consumer information that constitutes a "consumer report" under FCRA. *Id.*

One such requirement is that "furnishers of credit information" must "report accurate information to consumer reporting agencies regarding a consumer's credit." *Bach v. First Union Nat'l Bank,* 149 F.App'x 354, 358 (6th Cir.2005) (citing 15 U.S.C. § 1681s–2(a)(1)(A)). If a consumer disputes the accuracy of information furnished to a credit reporting agency, the furnisher is obligated to investigate the dispute

and correct any inaccuracies discovered. *Id.* (citing 15 U.S.C. § 1681s–2(b)(1)(A)-(D)). A plaintiff alleging violations of § 1681s–2(b) may bring a private cause of action to enforce his rights against the furnisher, *id.,* but only if the plaintiff can "show that the furnisher received notice from a consumer reporting agency, not the plaintiff, that the credit information is disputed," *Downs v. Clayton Homes, Inc.,* 88 Fed. App'x 851, 853–54 (6th Cir.2004) (citing *Young v. Equifax Credit Info. Servs., Inc.,* 294 F.3d 631, 639–40 (5th Cir.2002)).

   In this case, the Plaintiff has not alleged that he disputed the accuracy of the information the Defendants reported or that the Defendants received notice from a credit reporting agency of the dispute. The Plaintiff has therefore failed to plead all of the necessary elements of an FCRA claim. See *Downs,* 88 F. App'x at 854 ("In this case, the [plaintiffs] did not allege that they had filed a dispute with a credit reporting agency. Accordingly, they had no claim under the FCRA."); *Bridge v. Ocwen Fed. Bank,* 669 F.Supp.2d 853, 861–62 (N.D.Ohio 2009) (granting motion to dismiss § 1681 s–2(b) claim because plaintiff had "not alleged compliance with the statutory notice requirements"). The Court accordingly GRANTS the Defendants' motion to dismiss Count XIII.

*Miller v. Countrywide Home Loans*, S.D.Ohio No. 2:11-CV-393, 2012 WL 4503553 (Sept. 28, 2012), quoting *Hammond v. CITIBANK. N.A.,* S.D.Ohio No. 2:10–CV–1071, 2011 WL 4484416 (Sept. 27, 2011).

**{¶43}** CitiMortgage claims that the Rudziks failed to allege that they filed a dispute with a credit reporting agency and that CitiMortgage received notice of the dispute from a credit reporting agency. Thus, according to it, the claim fails as a matter of law.

**{¶44}** The Rudziks argue that they did plead these things in paragraphs 10 through 15 of the counterclaim. Those paragraphs state:

(10) After the months passed Mr. Rudzik and Ms. Kieffer we [sic] received a letter in the mail saying they were late on our payments–odd, because they never missed a payment.

(11) Mr. Rudzik and Ms. Kieffer called Ms. Patterson [the specialist], who–giving rise to another reasonable reliance–said to ignore the letter, which Mr. Rudzik and Ms. Kieffer did, reasonably thinking Ms. Patterson was competent and had everything under control.

(12) After that, Mr. Rudzik and Ms. Kieffer hadn't heard from Ms. Patterson relative to any "trial period" or, as a logical complement, any permanent modification, so they proceeded to pay their normal house payment.

(13) A subsequent conversation revealed that CitiMortgage, Inc. put the "trial period" payments in escrow, such to default Mr. Rudzik and Ms. Kieffer.

(14) CitiMortgage, Inc. moved for foreclosure, and stopped accepting payments, despite the fact that Mr. Rudzik and Ms. Kieffer made all payments timely, and in the amounts CitiMortgage Requested [sic].

(15) As a direct and proximate cause of the foregoing, Mr. Rudzik and Ms. Kieffer have endured financial and reputations damages as well as distress beyond what a normal person would be reasonably expected to endure.

09/04/12 Counterclaim.

{¶45} Considering the above statements and the law regarding what must be pled for a FCRA claim, we hold that the trial court correctly dismissed the claim; the counterclaim did not plead all necessary elements, namely that they disputed the accuracy of the information that CitiMortgage reported or that CitiMortgage received notice from a credit reporting agency of the dispute. See *Miller* and *Hammond*.

### 4. CSPA

**{¶46}** The final counterclaim is based on the Consumer Sales Practice Act found at R.C. 1345 et seq. Part of the action under the CSPA is based on alleged violations of the TILA and FCRA. Since both of those arguments fail, the CSPA violation that is based upon them also fails.

**{¶47}** That said, the claim is also based on the language in the CPSA, which states, "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.02(A). In the appellate brief, the Rudziks claim that the "consumer transaction" is the offer and acceptance of the mortgage modification. In response, CitiMortgage contends that mortgage or a modification of a mortgage is not a "consumer transaction" and cites to a recent Ohio Supreme Court's decision.

**{¶48}** R.C. 1345.01(A) defines a "consumer transaction as:

[The] sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things. "Consumer transaction" does not include transactions between persons, defined in sections 4905.03 and 5725.01 of the Revised Code, and their customers, except for transactions involving a loan made pursuant to sections 1321.35 to 1321.48 of the Revised Code and transactions in connection with residential mortgages between loan officers, mortgage brokers, or nonbank mortgage lenders and their customers; transactions involving a home construction service contract as defined in section 4722.01 of the Revised Code; transactions between certified public accountants or public accountants and their clients; transactions between attorneys, physicians, or dentists and their clients or patients; and transactions between veterinarians and their patients that pertain to medical treatment but not ancillary services.

R.C. 1345.01(A).

**{¶49}** The Ohio Supreme Court has recently reviewed this provision in the context of determining whether the servicing of a residential mortgage loan is a "consumer transaction." *Anderson v. Barclay's Capital Real Estate, Inc.*, 136 Ohio St. 3d 31, 32 (2013). It determined that it is not and that an "entity that services a residential mortgage loan is not a 'supplier' as defined in R.C. 1345.01(C)." *Id.* It went on to explain:

> In the servicing of a real estate mortgage, one essential element of R.C. 1345.01(A) is not met: there is no sale, lease, assignment, award by chance, or other transfer of a service to a consumer.
>
> Mortgage servicing is a contractual agreement between the mortgage servicer and the financial institution that owns both the note and mortgage. Mortgage servicing is carried out in the absence of a contract between the borrower and the mortgage servicer. We recognize that the mortgage servicer's duties may involve direct and indirect interactions with borrowers on behalf of the financial institution. Sometimes the mortgage servicer may even assist the borrower in modifying the terms of the note, but the mortgage servicer undertakes the negotiation not for itself but on behalf of the financial institution.
>
> These interactions do not satisfy the language found in R.C. 1345.01(A). Instead, mortgage servicing, similar to appraisal services and title services, is a "collateral service" associated with a pure real estate transaction. Except for the transactions specified in the statute, the CSPA does not apply to "collateral services that are solely associated with the sale of real estate and are necessary to effectuate a 'pure' real estate transaction." *U.S. Bank v. Amir,* 8th Dist. No. 97438, 2012-Ohio-2772, 2012 WL 2355620, ¶ 42–43, * * *.
>
> Moreover, transactions between mortgage-service providers and homeowners are not "consumer transactions" within the meaning of the CSPA because there is no "transfer of an item of goods, a service, a franchise, or an intangible, to an individual." *See* R.C. 1345.01(A) (" 'Consumer transaction' means a sale, lease, assignment, award by

chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things"). A financial institution may contract with a mortgage servicer to service the loan, but the mortgage servicer does not transfer a service to the borrower, which is what would be required in order to trigger the CSPA.

*Id.* at ¶ 12-15.

**{¶50}** Consequently, based upon that decision, the CSPA claim was properly dismissed.

### Conclusion

**{¶51}** For the foregoing reasons, the trial court correctly dismissed the TILA, FCRA and CSPA claims. Those decisions are hereby affirmed. As to the theft claim, given the allegations in the counterclaim and all reasonable inferences, this claim survives the Civ.R. 12(B)(6) motion. Thus, the trial court's decision to the contrary is reversed and the cause of action is remanded to proceed on the theft claim.


Donofrio, J.,
DeGenaro, P.J.,

DeGenaro, P.J., concurring in part and dissenting in part.

**{¶52}** I must dissent from my colleagues' conclusion that the Rudziks asserted a civil claim of theft sufficient to survive a motion to dismiss, but concur with the balance of the majority opinion.

**{¶53}** The transaction between the parties involves a note and mortgage to memorialize and secure a loan from CitiMortgage to finance the Rudziks' purchase of a home. At some point the Rudziks defaulted on the note and according to the Rudziks, the parties agreed to a 'trial modification period.' As this is an appeal of a judgment pursuant to Civ.R. 12(B)(6), we must presume these facts are true and construe them in favor of the Rudziks. Nonetheless, the Rudziks have failed to sufficiently plead a claim of theft against CitiMortgage.

**{¶54}** As noted by the majority in its discussion affirming the dismissal of the TILA claim, the trial period/loan modification never replaced the mortgage. Majority Opinion, ¶36. Thus, the Rudziks were still bound by the terms of the note and mortgage to make the monthly payments in the full amount agreed upon. Because the Rudziks' fell into arrears pursuant to those terms, CitiMortgage properly exercised its contractual remedy of filing a foreclosure complaint.

**{¶55}** Framing the parties' contractual relationship with the elements of the theft statute relied upon by the majority, R.C. 2913.02, the Rudziks consented to CitiMortgage applying *any* funds it received from them to the outstanding loan. The Rudziks have not alleged that CitiMortgage deprived them of their property and, for example, applied the funds to another customer's loan. The Rudziks had a contractual obligation to make the full monthly payment. Once they made their monthly payment, either the full or the reduced amount, the funds became CitiMortgage's property. The Rudziks do not, nor can they, claim that CitiMortgage was not entitled to receive or retain these reduced monthly payments. Escrowing the reduced payments was a bookkeeping choice that CitiMortgage made; it does not affect ownership of those funds.

**{¶56}** Even if CitiMortgage had followed the bookkeeping practice suggested by the Rudziks' argument, and 'applied' the reduced payments to their loan, this is a distinction without a difference. As noted above, the majority correctly held that the Rudziks were still bound by the original terms because the trial period did not result in a loan modification, which would then govern the parties' transaction. Pursuant to the terms of the note and mortgage, the Rudziks were in default which triggered CitiMortgage's contractual right to seek foreclosure.

**{¶57}** For these reasons, the Rudziks' have failed to sufficiently plead a claim of civil theft against CitiMortgage; thus the trial court's decision should be affirmed in its entirety.